Kim NOWATSKE and Julie Nowatske, Plaintiffs-Appellants,

v.

Mark D. OSTERLOH , M.D., The Medical Protective Company and Wisconsin Patients Compensation Fund, Defendants-Respondents.

Supreme Court

*No. 93–1555. Oral argument October 31, 1995.—Decided January 25, 1996.*

(Also reported in 543 N.W.2d 265.)

■■■■■■■■■■■■■■■■

■■■■■

For the plaintiff-appellants there were briefs by *David M. Skoglind* and *Warshafsky, Roter, Tarnoff, Reinhardt & Bloch, S.C.*, Milwaukee and oral argument by *Gerald J. Bloch.*

For the defendants-respondents there was a brief by *Paul H. Grimstad, John F. Mayer* and *Nash, Spindler, Dean & Grimstad*, Manitowoc and oral argument by *Robert L. McCracken.*

Amicus curiae brief was filed by *Mark L. Thomsen* and *Cannon & Dunphy, S.C.*, Brookfield for The Wisconsin Academy of Trial Lawyers.

Amicus curiae brief was filed by *Mark L. Adams* and *State Medical Society of Wisconsin* and *Barrett J.*

*Corneille, David J. Pliner* and *Bell, Metzner, Gierhart & Moore, S.C.*, all of Madison for the State Medical Society of Wisconsin.

SHIRLEY S. ABRAHAMSON, J. This is an appeal by Kim and Julie Nowatske from a judgment of the circuit court for Winnebago County, Thomas S. Williams, judge. The circuit court dismissed the complaint upon a jury finding that Mark D. Osterloh, M.D. (the defendant), did not negligently cause the Nowatskes' injuries. Upon certification of the court of appeals pursuant to Wis. Stat. (Rule) 809.61 (1993-94), this court accepted the case but limited its review to the following issue: "Whether standard jury instruction Wis JI—Civil 1023 accurately states the law of negligence for medical malpractice cases?" We conclude that the jury instruction read as a whole was not erroneous. Nevertheless, we also conclude that the instruction should be improved and recommend that the Civil Jury Instruction Committee revise the standard jury instruction Wis JI—Civil 1023 in light of this decision.

Having reached this conclusion, the court would ordinarily dispose of the other issues raised by the parties and determine whether the judgment of the circuit court should be affirmed. However, because we accepted only one issue raised in the Nowatskes' appeal, we cannot reach the other issues. Instead, we must remand the cause to the court of appeals to consider the other issues the Nowatskes raised and to determine the validity of the circuit court's judgment.[1]

---

[1] This court did not accept the following issue identified by the court of appeals and the Nowatskes: "Whether evidence that a medical expert witness was the subject of an unrelated prior malpractice action or a currently pending action is admissible

## I.

We briefly summarize the facts giving rise to this case, recognizing that the parties dispute whether certain events occurred, whether the surgery and care provided by the defendant were negligent and whether the defendant's alleged negligence caused the plaintiff's injury.[2]

One morning the plaintiff noticed an area of blurred vision in his right eye. He was referred to the defendant, a retina specialist in Oshkosh, who diagnosed him as having a retinal detachment.

Prior to surgery to repair his retina, the plaintiff signed a consent form explaining the risks and possible complications involved in the proposed treatment. He also viewed a videotape explaining the procedure of retinal reattachment. The parties dispute whether the defendant warned the plaintiff that "blindness" or "loss of vision" could result.[3]

The defendant elected to conduct a relatively common procedure, known as scleral buckling, in an effort to reattach the retina. Buckling procedures may raise

for impeachment purposes under 906.08, Stats.?" The Nowatskes' brief in the court of appeals raised a third issue: Did prejudice result from a witness's use of a pen light device during the trial?

For the court's decision regarding certification, see the unpublished order dated February 23, 1995, in the court's file on this case (Abrahamson and Geske, J.J., objecting to limiting the issues accepted on appeal).

[2] Both Kim Nowatske and his wife Julie Nowatske are plaintiffs in this case. In the interest of clarity, we refer only to Kim Nowatske as the plaintiff.

[3] The plaintiff did not raise the issue of informed consent either in the circuit court or before this court.

the intraocular pressure (IOP) in the eye, resulting in blindness.

Prior to placement of the buckle with permanent sutures, the defendant checked the IOP in the plaintiff's eye with his finger and then proceeded to attach the buckle. Subsequently, he again checked the IOP with his finger and concluded that it was within an acceptable range. The parties dispute whether the defendant should have used a tonometer rather than his finger to check the plaintiff's IOP.

On the morning following surgery, the defendant conducted a post-operative visit to assess the success of his surgery. The parties dispute whether the defendant measured the IOP. The defendant tested the plaintiff's vision with an ophthalmoscope, shining a light into the eye to check its response. Noting a normal "back-off" response to the light, he concluded that the surgery had been successful. The parties dispute whether the defendant should have also asked the plaintiff directly whether he could see out of his right eye.

Although the defendant did not administer any pressure-reducing medication, he did prescribe pain relievers for what he assessed as a normal amount of pain following such an operation. The parties dispute whether the prescription of pressure-reducing medication would have been more harmful than beneficial, given the side-effects associated with the medication in question.

Following discharge the plaintiff went home and experienced severe eye pain. Learning that upon discharge the plaintiff had not received the medicine prescribed to alleviate his pain, the defendant called in a prescription of pain-relievers to a local pharmacy. The parties dispute whether the defendant should have also asked for a further description of the plain-

tiff's pain or spoken with him directly rather than only speaking with the plaintiff's wife.

By the next morning, the swelling around the plaintiff's eye had subsided. Because the defendant had not indicated when the plaintiff's vision would return, the plaintiff remained unconcerned about his continuing inability to see out of his right eye. At the plaintiff's scheduled follow-up appointment, however, the defendant informed the plaintiff that he would be permanently blind in the right eye. The parties dispute whether the blindness was caused by increased anterior IOP resulting from the surgery or by a discrete vascular event such as an occlusion of the central retinal artery posteriorly.

On April 22, 1991, the plaintiff filed a complaint alleging that the defendant negligently treated him. During a five-day jury trial in January 1993, the plaintiff introduced expert testimony suggesting that if the defendant had utilized reasonable care, the plaintiff would not have lost his eyesight. The defendant, in turn, introduced expert testimony suggesting that the defendant had exercised ordinary care and that a high IOP was not the cause of the plaintiff's blindness.

At the defendant's request and over the plaintiff's objection, the circuit court used various paragraphs from the standard jury instruction pertaining to medical malpractice, Wis JI—Civil 1023, to instruct the jury.[4] In response to the verdict question asking whether the defendant was negligent, the jury answered "no," thus returning a verdict in his favor. The circuit court entered a judgment dismissing the complaint.

---

[4] Unless otherwise noted, all references are to the 1992 version of the instruction used at trial. With one exception noted below, it is the same as the recently revised 1995 instruction.

## II.

We first examine the standard of review applicable to a jury verdict in a case involving a challenge to the jury instructions.

First, a circuit court has broad discretion when instructing a jury so long as it fully and fairly informs the jury of the rules and principles of law applicable to the particular case. *Peplinski v. Fobe's Roofing, Inc.*, 193 Wis. 2d 6, 24, 531 N.W.2d 597 (1995) (quoting *Fischer v. Ganju*, 168 Wis. 2d 834, 849-50, 485 N.W.2d 10 (1992)); *D.L. v. Huebner*, 110 Wis. 2d 581, 624, 329 N.W.2d 890 (1983). An instruction that is an incorrect or misleading statement of the law is erroneous.

Second, a circuit court should instruct the jury with due regard to the facts of the case. *Carlson v. Drews of Hales Corner, Inc.*, 48 Wis. 2d 408, 414, 180 N.W.2d 546 (1970). The court has held that it is error to refuse to instruct on an issue that the evidence raises; it has also held that it is error to instruct on an issue that the evidence does not support. *Lutz v. Shelby Mut. Ins. Co.*, 70 Wis. 2d 743, 750, 235 N.W.2d 426 (1975).

Third, an instruction should not be unduly favorable to any party. While a circuit court has "some leeway in the choice of language and emphasis in framing instructions," the instructions "as a whole must not favor one side or the other but should set forth the respective versions of the evidence of the contestants." *Aetna Cas. & Sur. Co. v. Osborne-McMillan Elevator Co.*, 35 Wis. 2d 517, 529, 151 N.W.2d 113 (1967); *see also Huebner*, 110 Wis. 2d at 624.

Fourth, an appellate court must consider the instructions as a whole to determine whether the challenged instruction or part of an instruction is erroneous. The instructions are not erroneous if, as a whole, they adequately and properly informed the jury. *Peplinski*, 193 Wis. 2d at 25; *White v. Leeder*, 149 Wis. 2d 948, 954-55, 440 N.W.2d 557 (1989). "On review, the language of a jury instruction should not be fractured into segments, one or two of which, when considered separately and out of context, might arguably be in error." *State v. Paulson*, 106 Wis. 2d 96, 108, 315 N.W.2d 350 (1982).

Fifth, when the circuit court has given an erroneous instruction or has erroneously refused to give an instruction, a new trial is not warranted unless the error is prejudicial. "[A]n error relating to the giving or refusing to give an instruction is not prejudicial if it appears that the result would not be different had the error not occurred." *Lutz*, 70 Wis. 2d at 751. *See also* Wis. Stat. § 805.18(2) (1993-94); *Helmbrecht v. St. Paul Ins. Co.*, 122 Wis. 2d 94, 131, 362 N.W.2d 118 (1985).

## III.

The plaintiff's claim that Wis JI—Civil 1023 is erroneous and prejudicial focuses on the first three paragraphs of the instruction. As presented to the jury in this case, those paragraphs, virtually unmodified from the pattern instruction, read as follows:

> In treating Kim Nowatske, Dr. Osterloh was required to use the degree of care, skill, and judgment which is usually exercised in the same or similar circumstances by the average specialist who practices the specialty which Dr. Osterloh practices,

having due regard for the state of medical science at the time Kim Nowatske was treated. The burden in this case is on the plaintiffs to prove that Dr. Osterloh failed to conform to this standard.

A physician does not guarantee the results of his care and treatment. A physician must use reasonable care and is not liable for failing to use the highest degree of care, skill, and judgment. Dr. Osterloh cannot be found negligent simply because there was a bad result. Medicine is not an exact science. Therefore, the issue you must decide in determining whether Dr. Osterloh was negligent is not whether there was a bad result but whether he failed to use the degree of care, skill, and judgment which is exercised by the average physician practicing the sub-specialty of retinal surgery.

If you find that more than one method of treatment for Kim Nowatske's injuries is recognized, then Dr. Osterloh was at liberty to select any of the recognized methods. Dr. Osterloh was not negligent merely because he made a choice of a recognized alternative method of treatment if he used the required care, skill, and judgment in administering the method. This is true even though other medical witnesses may not agree with him on the choice that was made.

The plaintiff argues that this instruction was erroneous and prejudicial because (1) paragraph one of the instruction substitutes medical custom for reasonable care by defining the degree of care that must be exercised in terms of what the *average* physician would usually do under the same or similar circumstances and thereby improperly permits the medical profession to set the standard of care for physicians; (2) paragraph two of the instruction is unduly exculpatory by emphasizing the ways in which the defendant was *not* negligent and is consequently biased toward the defen-

dant; and (3) paragraph three instructs the jury that it must find for the defendant when an expert witness testifies that the defendant's actions represent a recognized alternative method of procedure and thereby strips the jury of its fact-finding function.[5]

We shall examine each of these paragraphs of the jury instruction in turn.

### A.

To repeat, the first paragraph of the circuit court's medical malpractice instruction to the jury in this case reads as follows:

---

[5] The plaintiff proposed the following modified version of the instruction:

> With regard to question 1 you are instructed that in undertaking to care for Kim Nowatske, Mark Osterloh was required to use the degree of care, skill and judgment usually exercised under the same or similar circumstances by reasonable physicians who specialize in the care of retina problems having due regard for the state of medical science at the time in question.
>
> A physician such as Dr. Osterloh is negligent when he fails to exercise reasonable and ordinary care. Reasonable and ordinary care is the degree of care which physicians who specialize in the care of retina problems ordinarily exercise under the same or similar circumstances. A physician fails to exercise reasonable and ordinary care when, without intending to do any wrong, he does an act or omits to act under circumstances in which a physician ought reasonably to foresee that such action or omission of action will subject his patient to an unreasonable risk of injury or damage.
>
> Whether or not Dr. Osterloh complied with the standards of care, skill and judgment required of him as someone who specializes in the care of retina problems is not a matter within the common knowledge or experience of lay persons. These standards are within the special knowledge of experts in the field of medicine and can only be established by the testimony of persons knowledgeable in the field of medicine, or by the written materials received in evidence.

431

In treating Kim Nowatske, Dr. Osterloh was required to use the degree of care, skill, and judgment which is usually exercised in the same or similar circumstances by the average specialist who practices the specialty which Dr. Osterloh practices, having due regard for the state of medical science at the time Kim Nowatske was treated. The burden in this case is on the plaintiffs to prove that Dr. Osterloh failed to conform to this standard.

The plaintiff's principal objection to this paragraph is that it defines the standard of care as that care usually exercised by the average physician practicing within the same specialty. According to the plaintiff the instruction thus equates the reasonable care required by law with customary medical care as defined by the medical profession, regardless of whether what is customary in the profession reflects what is reasonable in the wake of current medical science.

Because the medical profession is allowed to set its own definition of reasonable behavior in accordance with the customs of the profession, argues the plaintiff, what counts as an exercise of due care is established as a matter of law by doctors rather than as an issue to be resolved by the jury. Under Wis JI—Civil 1023, the plaintiff continues, all a defendant doctor need do is demonstrate that the methods used in treating the patient were customary in the medical profession. Even if the challenged custom is unreasonable and outdated, claims the plaintiff, the fact that it is "usually exercised in the same or similar circumstances by the average physician" is sufficient to shield clearly negligent conduct and negligent practitioners from liability.

The plaintiff is correct in suggesting that physicians, like all others in this state, are bound by a duty

to exercise due care. Every person in Wisconsin must conform to the standard of a reasonable person under like circumstances; so too, then, "[t]he duty of a physician or surgeon is to exercise ordinary care." *Scaria v. St. Paul Fire & Marine Ins. Co.*, 68 Wis. 2d 1, 11, 227 N.W.2d 647 (1975). As the amicus brief of the State Medical Society of Wisconsin correctly states, "the basic standard—ordinary care—does not change when the defendant is a physician. The only thing that changes is the makeup of the group to which the defendant's conduct is compared." Brief for the State Medical Society of Wisconsin as Amicus Curiae at 2.

The Medical Society's characterization of how the law gauges whether physicians have met their duty of reasonable care is correct. Generally a determination of negligence involves comparing an alleged tortfeasor's standard of care with "the degree of care which the great mass of mankind exercises under the same or similar circumstances." Wis JI—Civil 1005. When a claim arises out of highly specialized conduct requiring professional training, however, the alleged tortfeasor's conduct is compared with the conduct of others who are similarly situated and who have had similar professional training.[6]

Thus physicians are required to exercise reasonable care, a standard to which they have been held since

---

[6] *See, e.g., A.E. Investment Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 489, 214 N.W.2d 764 (1974) (an architect has "the duty of using the standard of care ordinarily exercised by the members of that profession"); *Malone v. Gerth*, 100 Wis. 166, 173, 75 N.W. 972 (1898) (quoted with approval in *Helmbrecht v. St. Paul Ins. Co.*, 122 Wis. 2d 94, 111, 362 N.W.2d 118 (1985)) (a lawyer is required to exercise a "reasonable degree of care and skill, and to possess to a reasonable extent the knowledge requisite to a proper performance of the duties of his profession").

early Wisconsin case law. In *Reynolds v. Graves*, 3 Wis. 371 [416], 375-76 [421-22] (1854), a physician's duty of care was also expressed as the obligation "to use reasonable professional skill and attention" and "to use due and reasonable skill and diligence" in an effort to cure the patient.

In *Gates v. Fleischer*, 67 Wis. 504, 507, 30 N.W. 674 (1886), the court repeated that the defendant physician "was bound to exercise reasonable skill and care in the treatment of the plaintiff." The court then proceeded to define that care in language similar to that now incorporated into the first paragraph of Wis JI—Civil 1023, stating that the physician "was bound to bring to [the plaintiff's] aid and relief such skill as is ordinarily possessed and used by physicians . . . having regard to the advanced state of the profession at the time of treatment."[7]

These early cases demonstrate that the standard of reasonable care applicable to all people in this state applies to physicians in this state as well. Subsequent case law has confirmed and amplified what these early cases announced.[8]

---

[7] *See also Kuehnemann v. Boyd*, 193 Wis. 588, 591-92, 214 N.W. 326 (1927) *overruled on other grounds by Fehrman v. Smirl*, 20 Wis. 2d 1, 21-22, 121 N.W.2d 255 (1963); *Jaeger v. Stratton*, 170 Wis. 579, 581, 176 N.W. 61 (1920); *Wurdemann v. Barnes*, 92 Wis. 206, 208, 66 N.W. 111 (1896); *Nelson v. Harrington*, 72 Wis. 591, 597, 40 N.W. 228 (1888).

With the exception of *Reynolds*, the early cases also adhered to the locality rule which equated a physician's exercise of ordinary care with the standard exercised by other physicians in the same or similar communities. As we explain below, the locality rule was abolished by *Shier v. Freedman*, 58 Wis. 2d 269, 280, 206 N.W.2d 166 (1973).

[8] *See, e.g., Kerkman v. Hintz*, 142 Wis. 2d 404, 419-420, 418 N.W.2d 795 (1988) (chiropractors must "exercise that degree of

The cases also demonstrate, as the plaintiff urges, that should customary medical practice fail to keep pace with developments and advances in medical science, adherence to custom might constitute a failure to exercise reasonable care. The court explained its aversion to equating custom with reasonable care in abolishing the locality rule. The locality rule, observed the court, allowed a small group, through its "laxness or carelessness," to "establish a local standard of care that was below that which the law requires." *Shier v. Freedman*, 58 Wis. 2d 269, 280, 206 N.W.2d 166 (1973) (quoting *Pederson v. Dumouchel*, 431 P.2d 973 (Wash. 1967)). But "[n]egligence," the court continued, "cannot be excused on the ground that others in the same locality practice the same kind of negligence. No degree of antiquity can give sanction to usage bad in itself." *Id.* Since technological changes insured that there was no longer any "lack of opportunity for a physician or surgeon to keep abreast of the advances made in his profession and to be familiar with the latest methods

care, diligence, judgment, and skill which is exercised by a reasonable chiropractor under like or similar circumstances"; such a standard is consistent with that imposed on other professionals); *Francois v. Mokrohisky*, 67 Wis. 2d 196, 201-02, 226 N.W.2d 470 (1975) ("[l]ike automobile drivers, engineers, common laborers, and lawyers, [physicians] are obliged to conform to reasonable care in the circumstances").

The circuit court in *Steinberg v. Arcilla*, 194 Wis. 2d 759, 773, 535 N.W.2d 444 (Ct. App. 1995), instructed the jury as follows:

A physician . . . is negligent when he fails to exercise reasonable and ordinary care. A physician fails to exercise reasonable and ordinary care when, without intending to do any wrong, he does an act or omits an act under circumstances in which a physician ought reasonably to foresee that such action or omission will subject his patient to an unreasonable risk [of] injury or damage.

and practices adopted," *id.*, the court concluded that the reasons prompting the abolition of the locality rule elsewhere applied "with equal logic and persuasion in Wisconsin." *Shier*, 58 Wis. 2d at 283.

Wis JI—Civil 1023 incorporates the reasoning of *Shier*, not only by defining reasonable care as that "which is usually exercised in the same or similar circumstances by the average physician" but also by requiring that this definition of care itself be shaped by a "due regard for the state of medical science at the time plaintiff was treated." If what passes for customary or usual care lags behind developments in medical science, such care might be negligent, despite its customary nature.[9]

Both the amicus brief of the State Medical Society of Wisconsin and the defendant have acknowledged

---

[9] The relation between custom and negligence in medical malpractice has long been a topic of debate in American tort law. *See, e.g.*, 3 Fowler V. Harper *et al., The Law of Torts* § 17.3 (2d ed. 1986); W. Page Keeton *et al., Prosser and Keeton on the Law of Torts* § 32, at 185-89 (5th ed. 1984); Richard A. Epstein, *Medical Malpractice, Imperfect Information, and the Contractual Foundation for Medical Services*, Law & Contemp. Probs., Spring 1986, at 201, 202; Clark C. Havighurst, *Altering the Applicable Standard of Care*, Law & Contemp. Probs., Spring 1986, at 265, 266-70; John Kimbrough Johnson, Jr., *An Evaluation of Changes in the Medical Standard of Care*, 23 Vand. L. Rev. 729, 741-747 (1970); Joseph H. King, Jr., *In Search of a Standard of Care for the Medical Profession: The "Accepted Practice" Formula*, 28 Vand. L. Rev. 1213 (1975); Allan McCoid, *The Care Required of Medical Practitioners*, 12 Vand. L. Rev. 549, 605 (1959); Matthew J. Mitten, *Team Physicians and Competitive Athletes: Allocating Legal Responsibility for Athletic Injuries*, 55 U. Pitt. L. Rev. 129, 146 (1993); Richard N. Pearson, *The Role of Custom in Medical Malpractice Cases*, 51 Ind. L.J. 528 (1976).

that the first paragraph of Wis JI—Civil 1023 requires that custom must be dynamic to be reasonable. As interpreted by the Medical Society, the portion of Wis JI—Civil 1023 which instructs the jury to judge the defendant's conduct with "due regard for the state of medical science at the time the plaintiff was treated" means that "[p]laintiffs can always, if appropriate, present evidence regarding the 'state of medical science' to show that a professional custom is obsolete or unreasonable." Brief for the State Medical Society of Wisconsin as Amicus Curiae at 3.[10]

The defendant interprets the same jury instruction language as applying "a dynamic standard" to professionals because the standard "changes as the state of knowledge of the profession changes." Brief for Defendant at 17. "Absent a dynamic standard," the defendant continues, "the law could not adjust to changes and improvement in medical science." *Id.* at 18. At oral argument before this court, counsel for the defendant stated that if a particular custom in the medical profession failed to keep pace with what developments in medical science had rendered reasonable,

---

[10] What constitutes reasonable physician care in the wake of developments in medical science must ordinarily be established by expert testimony, because "medical practice demands special knowledge or skill or experience on subjects which are not within the realm of the ordinary experience of mankind, and which require special learning, study, or experience." *Weiss v. United Fire & Casualty Co.*, 197 Wis. 2d 365, 541 N.W.2d 753 (1995) (quoting *Cramer v. Theda Clark Mem. Hosp.*, 45 Wis. 2d 147, 150, 172 N.W.2d 427 (1969)). On the basis of expert testimony, a jury could determine whether the customary practices of the medical profession had kept pace with developments in medicine at the time of an incident and whether a particular practice in issue was therefore negligent.

the plaintiff could introduce evidence demonstrating that the custom in question constituted negligent conduct.

We agree with the parties and the Medical Society that while evidence of the usual and customary conduct of others under similar circumstances is ordinarily relevant and admissible as an indication of what is reasonably prudent, customary conduct is not dispositive and cannot overcome the requirement that physicians exercise reasonable care.[11]

The standard of care applicable to physicians in this state can not be conclusively established either by what the majority of practitioners do or by a sum of the customs which those practitioners follow. It must instead be established by a determination of what it is reasonable to expect of a professional given the state of

---

[11] *Cf.* Wis JI—Civil 1019 ("[c]ustom . . . cannot overcome the requirement of reasonable safety and ordinary care. A practice which is obviously unreasonable and dangerous cannot excuse a person from responsibility for carelessness"); 3 Fowler V. Harper *et al., The Law of Torts* § 17.3 at 579 (2d ed. 1986) ("[b]y the great weight of modern American authority a custom either to take or to omit a precaution is generally admissible as bearing on what is proper conduct under the circumstances, but is not conclusive"); Keeton, *supra,* § 33, at 195 (5th ed. 1984) ("[m]uch the better view, therefore, is that . . . every custom is not conclusive merely because it is a custom, that it must meet the challenge of 'learned reason,' and be given only the evidentiary weight which the situation deserves").

The court has concluded that a "self-created custom of the profession" is an improper standard for measuring a doctor's conduct in an informed consent case. *Scaria v. St. Paul Fire & Marine Ins. Co.,* 68 Wis. 2d 1, 12, 227 N.W.2d 647 (1975). The *Scaria* court concluded that the instruction improperly allowed physicians to set their own standard of care.

medical knowledge at the time of the treatment in issue.

We recognize that in most situations there will be no significant difference between customary and reasonable practices. In most situations physicians, like other professionals, will revise their customary practices so that the care they offer reflects a due regard for advances in the profession. An emphasis on reasonable rather than customary practices, however, insures that custom will not shelter physicians who fail to adopt advances in their respective fields and who consequently fail to conform to the standard of care which both the profession and its patients have a right to expect.

The issue then is whether the first paragraph of the instruction conveys the correct legal message that the defendant is held to a standard of reasonable care, skill and judgment and that reasonable care, skill and judgment are not necessarily embodied by the customary practice of the profession but rather represent the practice of physicians who keep abreast of advances in medical knowledge.

■

We conclude that the first paragraph of Wis JI—Civil 1023, read in conjunction with the remainder of the instructions given, conveys this message. The first paragraph speaks of the degree of care, skill, and judgment usually exercised in the same or similar circumstances by the average specialist. The second paragraph expressly states that a physician must use reasonable care. The third paragraph cautions that even a physician who has chosen a recognized method of treatment can nevertheless be found negligent for failing to exercise "the required care, skill, and judgment in administering the method" chosen. And much

like the first paragraph of the plaintiff's proposed instruction, the first paragraph of the instruction given requires that in determining the degree of care, skill and judgment required of a physician, "due regard" should be given to "the state of medical science." The phrase "due regard for the state of medical science" tells the jury that a reasonably competent practitioner is one who keeps up with advances in medical knowledge.

Paragraph one of the plaintiff's proposed instruction, see *supra* note 5, is substantially the same as paragraph one of the instruction given except that the plaintiff's proposed instruction uses the word "reasonable" to describe the physician, while the instruction given uses the word "average."

The word "average" is problematic, as we explain more fully below. Viewed as a whole, however, the instruction given does not imply that the degree of care, skill and judgment expected of a doctor is set by the customs of the profession. Consequently, we disagree with the plaintiff's claim that the first paragraph of Wis JI—Civil 1023 allows medical custom to be dispositive regarding what constitutes reasonable medical care.

Nevertheless, the plaintiff's arguments demonstrate that this pattern jury instruction could be improved, and we conclude that the instruction should be revised.

The Civil Jury Instruction Committee's accompanying comment to Wis JI—Civil 1023 correctly states that the "basic inquiry with respect to the defendant's conduct [should] be framed in simple terms of negligence" and that "[f]ailure on the part of the doctor to conform to the applicable standards of care constitutes negligence." But Wis JI—Civil 1023 itself neither

frames the standard of care in simple terms of negligence nor informs the jury that failure to conform to the applicable standard of care constitutes negligence.[12]

The instruction's failure to define negligence is exacerbated by its use of the word "average" to denote the subset of physicians with whom an alleged tortfeasor is to be compared. The fallacy in the "average" formulation is that it bears no intrinsic relation to what is reasonable. As the American Law Institute stated in its commentary to sec. 299A Restatement (Second) of Torts (1965), "those who have less than . . . average skill may still be competent and qualified. Half of the physicians of America do not automatically become negligent in practicing medicine . . . merely because their skill is less than the professional average."[13]

The Civil Jury Instruction Committee's comment to Wis JI—Civil 1023 tacitly recognizes the difficulty with the word "average," stating that it interprets "average" in the instruction and in the court's decisions on which the instruction is based "to mean a typical

---

[12] A 1995 revision to Wis JI—Civil 1023 has attempted to address the second of these two issues. The 1995 revision adds a sentence to the first paragraph of the instruction stating that "[f]ailure to conform to this standard is negligence." But because the 1995 revision does not address the plaintiff's argument regarding how the reasonable standard of care applicable to physicians should be defined and applied, this revision does not address the plaintiff's argument that an excessive reliance on custom distorts the relation between physicians' standard of care and ordinary negligence.

[13] Restatement (Second) of Torts § 199A cmt. e (1965). *See also* Keeton, *supra,* § 32, at 187 (reliance on what is average in determining what constitutes reasonable medical care is "clearly misleading").

physician in the same class and not a midpoint concept." "The Committee does not believe," the comment continues, "that measuring a doctor's conduct against the conduct normally exercised by physicians changes the standard of conduct from reasonable care to average care."[14]

■

On reflection, we too have reservations about the reference to "average" in Wis JI—Civil 1023 and conclude that this word should be eliminated. Loaded as it is with mathematical connotations, the word could distract a jury from its true purpose in a medical malpractice case: an investigation of whether the alleged tortfeasor exercised reasonable care. Reasonable care cannot be established by determining whether a physician provided care above or below the mean of the medical profession, but rather must be determined by assessing whether a patient received the standard of care he or she might reasonably expect from that practitioner, with due regard for the state of medical science at the time of treatment.

### B.

The second paragraph of the circuit court's medical malpractice instruction to the jury in this case reads as follows:

---

[14] In the initial version of Wis JI—Civil 1023 in 1963, the first paragraph of the instruction spoke in terms of the "degree of care, skill, and judgment which is usually exercised by *reputable* physicians" rather than average physicians. In fashioning a replacement for the locality rule which it abolished, *Shier* appears to be the first Wisconsin case to use the phrase "average practitioner." *Shier*, 58 Wis. 2d at 283.

A physician does not guarantee the results of his care and treatment. A physician must use reasonable care and is not liable for failing to use the highest degree of care, skill, and judgment. Dr. Osterloh cannot be found negligent simply because there was a bad result. Medicine is not an exact science. Therefore, the issue you must decide in determining whether Dr. Osterloh was negligent is not whether there was a bad result but whether he failed to use the degree of care, skill, and judgment which is exercised by the average physician practicing the sub-specialty of retinal surgery.

The plaintiff does not suggest that this paragraph in any way misconstrues or misrepresents prior case law, from which much of the paragraph's language is derived. *See, e.g., Kuehnemann v. Boyd*, 193 Wis. 588, 592-93, 214 N.W. 326 (1927) ("we see no reason why proof of a bad result should constitute proof of negligence on the part of the physician"); *Francois v. Mokrohisky*, 67 Wis. 2d 196, 201, 226 N.W.2d 470 (1975) (medicine "is not an exact science, and even the very best of [physicians] can be wrong in diagnosis or procedure"). *See also Hoven v. Kelble*, 79 Wis. 2d 444, 456, 256 N.W.2d 379 (1977).

The plaintiff characterizes the paragraph as argumentative, however, because it allegedly accords undue emphasis to the defendant's case by repeatedly telling the jury what is not negligent without ever explaining what negligence is. Furthermore, argues the plaintiff, the undue prominence accorded what is not negligent in the first two paragraphs is exacerbated by the third paragraph, which also instructs the jury regarding what behavior is not negligent when it states that a physician choosing an alternative method of treatment is not negligent so long as he or she exercises the requisite degree of care.

Compounding the second paragraph's allegedly disproportionate emphasis on behavior which is not negligent, argues the plaintiff, the facts in this case did not merit giving the first sentence of that paragraph. Although the first sentence simply states that a doctor does not guarantee a favorable result, the plaintiff never claimed that the defendant was guaranteeing results. Hence in giving this part of Wis JI—Civil 1023, insists the plaintiff, the circuit court did not fulfill the requirement that an "instruction must be germane to the situation at hand and must be framed in light of the evidentiary issues." *Carlson*, 48 Wis. 2d at 414.

Finally the plaintiff contends that by repeatedly emphasizing forms of behavior which are not negligent, Wis JI—Civil 1023 ignores this court's admonition that an instruction "should not give undue prominence to the contention of one party without giving equal prominence to the contention of the other party." *Kuklinski v. Dibelius*, 267 Wis. 378, 381, 66 N.W.2d 169 (1954).

We agree with the plaintiff that the circuit court need not have given the instruction's "no guarantee" language and we acknowledge that the second paragraph of Wis JI—Civil 1023 largely defines negligence through what is not negligent. Nevertheless, we conclude that the instruction is not erroneous.

First, concepts are frequently defined by what they are not. For reasons suggested by the plaintiff himself in mounting his attack against custom, defining negligence by what it is not is especially applicable here because the concept requiring definition is necessarily dynamic and changing.

Second, even assuming *arguendo* that the disputed sentences are in error, we again emphasize that when we review jury instructions, their language "should not be fractured into segments, one or two of

444

which, when considered separately and out of context, might arguably be in error." *Paulson*, 106 Wis. 2d at 108. Any error, the *Paulson* court instructs us, "must permeate the underlying meaning of the instruction" for there to be reversible error. *Id.*

When read in the context of both the remaining portions of Wis JI—Civil 1023 and the instructions as a whole, any alleged bias in the second paragraph of this instruction is readily dissipated. As the defendant points out in his brief to this court, the fifth paragraph of Wis JI—Civil 1023, which addresses the relation between negligence and cause and which was also given at trial, could be perceived as demonstrating a bias in favor of the plaintiff.[15] Similarly, as the defendant suggested in oral argument before this court, one could conclude that the damages instructions given to the jury at trial were erroneous because of their focus on the plaintiff's suffering.[16]

We would reject such arguments, as we reject the one made here by the plaintiff. While jury instructions can appear to be biased or argumentative when read in isolation, the litmus test applied by this court when

---

[15] As given at trial, the fifth paragraph of Wis JI—Civil 1023 reads as follows:

> The cause question asks whether there was a causal connection between negligence on the part of Dr. Osterloh, if you find such negligence, and Kim Nowatske's present condition. A person's negligence is a cause of a plaintiff's condition if the negligence was a substantial factor in producing the present condition of the plaintiff's health. This question does not ask about "the cause" but rather "a cause." The reason for this is that there can be more than one cause of a condition.

[16] The circuit court gave the jury both Wis JI—Civil 1700 ("Damages: General") and Wis JI—Civil 1750A ("Personal Injury").

reviewing such instructions is whether that bias persists when the instructions are read together. Read together with the remaining instructions given by the circuit court, the second paragraph of Wis JI—Civil 1023 passes that test. We therefore conclude that the second paragraph of Wis JI—Civil 1023 as given in this case was not erroneous.[17]

## C.

The third paragraph of the circuit court's medical malpractice instruction to the jury in this case reads as follows:

> If you find that more than one method of treatment for Kim Nowatske's injuries is recognized, then Dr. Osterloh was at liberty to select any of the recognized methods. Dr. Osterloh was not negligent merely because he made a choice of a recognized alternative method of treatment if he used the required care, skill, and judgment in administering the method. This is true even though other medical witnesses may not agree with him on the choice that was made.[18]

The plaintiff contends that the last sentence of this paragraph of the instruction invades the province of the jury by requiring the jury to disregard other expert testimony and to conclude that a physician has not

---

[17] In *Steinberg v. Arcilla*, 194 Wis. 2d at 773-74, 535 N.W.2d 444 (Ct. App. 1995), the court of appeals recently reached a similar conclusion when it rejected a claim that the second paragraph of Wis JI—Civil 1023 prejudicially tipped the scales in favor of the defendant physician.

[18] This paragraph is apparently derived from *Treptau v. Behrens Spa, Inc.*, 247 Wis. 438, 20 N.W.2d 108 (1945); *Holton v. Burton*, 197 Wis. 405, 222 N.W. 225 (1928); *DeBruine v. Voskuil*, 168 Wis. 104, 169 N.W. 288 (1918).

acted negligently when any expert testifies that the physician pursued a recognized method of treatment. Not only does such an instruction unduly favor the defendant, the plaintiff insists, but it also conflicts with another instruction given the jury, Wis JI—Civil 260 ("Expert Testimony"), which confers upon the jury the right to determine the credibility of experts.[19]

In response, the defendant asserts that the purpose of the third paragraph in the instruction is to inform the jury that there may be more than one accepted method of treatment and that a doctor may not be held negligent merely because the doctor made a choice of a recognized alternative method of treatment.

We disagree with the plaintiff's interpretation of the third paragraph of JI—Civil 1023.

First, the opening of the third paragraph states that a doctor cannot be excused for utilizing an alternative method until "you [the jury] find that more than one method of treatment . . . is recognized." Thus the instruction insures that it is for the jury, exercising its role as fact-finder, to determine whether there is more than one method of treatment as well as whether the treatment method chosen is among those methods recognized as acceptable.

Second, the circuit court informed the jurors that they were "the sole judges of the credibility of the witnesses and the weight to be given to their testimony"

---

[19] As given to the jury in this case, Wis JI—Civil 260 stated, in pertinent part:

> You are not bound by any expert's opinion. In resolving conflicts in expert testimony, weigh the different expert opinions against each other and consider the relative qualifications and credibility of the experts, the reasons and facts supporting their opinions, and whether the facts and reasons given are based on facts you find are established by the evidence in this case.

and that while "[o]pinion evidence was admitted in this case to help you reach a conclusion," "[y]ou are not bound by any expert's opinion." *See* Wis JI—Civil 215; Wis JI—Civil 260.

Jury instructions are to be construed as a whole, *Paulson*, 106 Wis. 2d at 108, and "[w]e must assume the jury followed the instructions," *Johnson v. Pearson Agri-Systems, Inc.*, 119 Wis. 2d 766, 776, 350 N.W.2d 127 (1984). Consequently, we must assume that the jurors listened and adhered to those portions of the circuit court's instructions informing them that they were not bound by any expert's opinion regarding what procedures were "recognized" or whether the defendant acted negligently.

Third, we disagree with the plaintiff's claim that the final sentence of this paragraph of the instruction requires a finding of non-negligence whenever any expert testifies that an allegedly negligent physician has pursued an accepted treatment method. The sentence states that "[t]his is true even though other medical witnesses may not agree . . . on the choice [of methods] that was made." The "this" which is "true" refers to the antecedent sentence, which states that a physician is not negligent merely because he chose a recognized alternative method. As that preceding sentence also makes clear, to be negligent a physician must also fail to exercise reasonable care in using that recognized alternative method.

■■

The third paragraph of the instruction would be clearer if its final sentence were eliminated or if the paragraph stated explicitly that the jury alone determines which methods of treatment are "recognized" on the basis of the expert testimony in evidence. But these suggested revisions do not alter our conclusion that the

third paragraph adequately instructed the jury regarding its prerogative to assess and weigh the evidence before it in reaching a verdict.

To sum up, we conclude that these three paragraphs of Wis JI—Civil 1023, read as a whole and in conjunction with the other instructions given in this case, were not erroneous. At the same time, however, we recognize that the plaintiff has pointed to a number of ways in which the first three paragraphs of Wis JI—Civil 1023 might be clarified and thereby improved. Hence even though we hold that the pattern jury instruction was not erroneous in this case, we also conclude that it should be revised.

For the reasons set forth we remand the cause to the court of appeals for further proceedings consistent with this opinion.

*By the Court.*—The cause is remanded to the court of appeals.