Kim NOWATSKE and Julie Nowatske, Plaintiffs-Appellants,†

v.

Mark D. OSTERLOH, M.D., The Medical Protective Company and Wisconsin Patients Compensation Fund, Defendants-Respondents.

Court of Appeals

*No. 93–1555. Submitted on briefs February 29, 1996.—Decided April 3, 1996.*

(Also reported in 549 N.W.2d 256.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *David M. Skoglind, Esq.*

of *Warshafsky, Rotter, Tarnoff, Gesler, Reinhardt & Bloch, S.C.* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Paul H. Grimstad* and *John F. Mayer* of *Nash, Spindler, Dean & Grimstad* of Manitowoc.

On behalf of the Wisconsin Academy of Trial Lawyers, an amicus curiae brief was submitted by *Mark L. Thomsen* of *Cannon & Dunphy, S.C.* of Milwaukee.

Before Brown, Nettesheim and Snyder, JJ.

NETTESHEIM, J. Kim and Julie Nowatske appeal from a trial court judgment dismissing their complaint following a jury determination that Dr. Mark D. Osterloh was not negligent in his treatment of Kim for a retinal detachment condition.

On appeal, the Nowatskes challenge a trial court evidentiary ruling which allowed their medical expert witness to be impeached with evidence that the expert was named as a defendant in two prior unrelated medical malpractice actions: one dismissed and one pending. We conclude that such evidence is inadmissible for impeachment purposes under § 906.08, STATS., and that the trial court erred in admitting the evidence. However, we hold that the error was harmless in this case. We also reject the Nowatskes' further arguments that the trial court erred by allowing a witness to use an ophthalmoscope to perform a brief in-court demonstration and that there was no credible evidence to support the verdict. We affirm the judgment.

501

## BACKGROUND

This action arises from the Nowatskes' April 1991 complaint alleging that Osterloh negligently treated Kim in January 1989 when Osterloh used his finger, rather than a tonometer, to measure Kim's intraocular pressure. The Nowatskes alleged that Osterloh's "inadequate" postoperative examination negligently failed to confirm whether Kim had vision in his right eye. A jury rejected the Nowatskes' claim. We previously certified this case to the Wisconsin Supreme Court on two issues: (1) whether the pattern medical malpractice jury instruction, WIS J I—CIVIL 1023, accurately states the law of medical malpractice; and (2) whether the type of impeachment which occurred in this case is permissible. The supreme court accepted this case only on the first issue. The court upheld the pattern instruction and remanded the remaining issues for our review.[1] *See Nowatske v. Osterloh,* 198 Wis. 2d 419, 424, 543 N.W.2d 265, 266 (1996). Because the facts are already given in detail in the supreme court's decision, *see id.* at 424-27, 543 N.W.2d at 266-68, we will not separately state them here. Instead, we will allude to only those which are necessary to the matter under discussion.

## DISCUSSION

### Impeachment Evidence

The Nowatskes contend that the trial court improperly allowed Osterloh to impeach Dr. Jay

---

[1] The supreme court held that, when read as a whole, the instruction is not erroneous, although it could be clarified and improved. *Nowatske v. Osterloh,* 198 Wis. 2d 419, 449, 543 N.W.2d 265, 276 (1996).

Fleischman, one of their expert medical witnesses, under § 906.08(1), STATS.[2] The trial court denied the Nowatskes' motion in limine which sought to prevent any reference during trial to the fact that two medical malpractice claims, unrelated to the present action, had previously been filed against Fleischman. As a result, Fleischman was questioned on direct and cross-examination about these actions.

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Section 904.01, STATS. Although evidence may be relevant, it may nonetheless be excluded if its probative value is substantially outweighed by the risk of unfair prejudice, confusion of the issues, the misleading of the jury or other considerations. Section 904.03, STATS. Such evidentiary determinations are within the trial court's broad discretion. *State v. Lindh,* 161 Wis. 2d 324, 348, 468 N.W.2d 168, 176 (1991). This court will reverse an evidentiary ruling only if the trial court's determination represents a prejudicial misuse of discretion. *See id.* at 348-49, 468 N.W.2d at 176.

Fleischman was cross-examined as follows:

---

[2] Section 906.08(1), STATS., provides:

**Evidence of character and conduct of witness. (1)** OPINION AND REPUTATION EVIDENCE OF CHARACTER. Except as provided in s. 972.11(2), the credibility of a witness may be attacked or supported by evidence in the form of reputation or opinion, but subject to these limitations: a) the evidence may refer only to character for truthfulness or untruthfulness, and b), except with respect to an accused who testifies in his or her own behalf, evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

Q. All right, Doctor, I think you told us this morning you personally have been sued for medical negligence twice in response to one of your counsel's questions?

A. I have been named in two lawsuits.

Q. The first lawsuit you were named in has been dismissed?

A. Yes.

Q. I take it it was without merit?

A. Correct.

Q. Doctors sometimes get sued without merit, do you agree?

A. Yes.

Q. And the second suit is still pending?

A. That's correct.

Q. We don't know what the outcome of that lawsuit will be?

A. No, we don't.

We agree with the Nowatskes that the trial court erred by allowing this evidence to be admitted at trial. We find *Lindh* instructive on the issue and reject Osterloh's argument that the supreme court's only holding in that case was that the court of appeals erred by substituting its discretion for that of the trial court's. *See id.* In *Lindh,* a criminal defendant sought to introduce evidence under § 906.08(1), STATS., that allegations of professional misconduct had been brought against the state's psychiatric expert. *See Lindh,* 161 Wis. 2d at 358, 468 N.W.2d at 180. Reversing the court of appeals, the supreme court held that the trial court did not err in excluding the evidence, stating:

504

The character of a witness may be impeached only in regard to matters which go directly to his [or her] reputation for truth and veracity. We have long considered that on cross-examination into the character of a witness, use of irrelevancies, insinuating that a person is of bad moral character, tending to degrade him [or her] in the eyes of the jury, is not a proper impeachment device. Virtually by definition, such evidence is not relevant, tending only to prejudice the jury against the witness.

*Id.* (citations omitted).

■

In this case, evidence of the prior malpractice action and the pending action did not cast light on Fleischman's character for truthfulness or untruthfulness. *See id.; see also* § 906.08(1), STATS. The criterion of relevancy is whether the evidence sought to be introduced would shed any light on the subject of inquiry. *Lindh,* 161 Wis. 2d at 348, 468 N.W.2d at 176. The subject of inquiry in this case was whether Osterloh was or was not negligent in treating Kim. Before cross-examination will be allowed, there must be a reasonable relationship between the evidence sought to be introduced and the proposition to be proved. *Id.* There was no such connection in this case between Fleischman's role as a defendant in the prior medical malpractice actions and his opinion testimony in this case.

■

The testimony elicited from Fleischman merely inquired whether he had been the subject of the malpractice actions. There was no testimony that in either of those proceedings he had displayed a character for untruthfulness such that his credibility could reasonably be questioned in this case. On direct

examination, Fleischman indicated that the first malpractice claim was commenced on behalf of a plaintiff who died of heart problems, but that the action against Fleischman had been dismissed without any determination as to his alleged negligence.[3] The cross-examination established, for a second time, the filing of that action and that the action had been dismissed as against Fleischman. Fleischman's testimony regarding the second case was limited to the fact that the case was still pending. The cumulative effect of this testimony did not have any bearing on Fleischman's credibility, and reference to the actions did not detract from his expertise and ability to render an opinion regarding the Nowatskes' claim against Osterloh. Instead, the testimony went only to whether similar allegations had been made against Fleischman, which does not impact on his credibility as a witness. Section 906.08, STATS., permits the impeachment of a witness "only in regard to matters which go directly to his [or her] reputation for truth and veracity." *Lindh*, 161 Wis. 2d at 358, 468 N.W.2d at 180.

Thus, we conclude that the trial court erred when it admitted evidence of the prior unrelated medical malpractice actions. However, this finding of error does not end our inquiry. *See Town of Geneva v. Tills,* 129 Wis. 2d 167, 184, 384 N.W.2d 701, 708 (1986). Section 805.18(2), STATS., provides that no judgment shall be reversed or set aside or a new trial granted "unless in the opinion of the court to which the application is made, *after an examination of the entire action or proceeding*, it shall appear that the error complained of

---

[3] Faced with the trial court's adverse ruling on the motion in limine, the Nowatskes themselves introduced evidence of the prior actions against Fleischman.

has affected the substantial rights of the party." (Emphasis added.) A reversal is required under § 805.18(2) only if the result might, within reasonable probabilities, have been more favorable to the complaining party had the error not occurred. *Heggy v. Grutzner,* 156 Wis. 2d 186, 196, 456 N.W.2d 845, 850 ( Ct. App. 1990). This requires that we weigh the effect of the inadmissible evidence against the totality of the credible evidence supporting the verdict. *Tim Torres Enters. v. Linscott,* 142 Wis. 2d 56, 78, 416 N.W.2d 670, 679 (Ct. App. 1987).

Here, all the jury learned from the improper questioning was that Fleischman had been named as a defendant in two prior actions, one which had been dismissed and another which was still pending. Furthermore, the cross-examination established that the dismissed action "was without merit," a statement which favors, rather than discredits, Fleischman. The cross-examination also established that "Doctors sometimes get sued without merit," a statement which also favors, rather than discredits, Fleischman as to both actions. Finally, we observe that the Nowatskes do not contend that this evidence surfaced in any other portion of the trial, particularly in arguments to the jury. Given the mild and isolated treatment which the evidence received and given the weight of the evidence which otherwise supports the verdict (a matter we will discuss later), we conclude that the evidence had no bearing on the ultimate verdict and therefore its admission was harmless error. *See Anello v. Savignac,* 116 Wis. 2d 246, 252, 342 N.W.2d 440, 443 (Ct. App. 1983); *see also Tim Torres,* 142 Wis. 2d at 78, 416 N.W.2d at 679.

507

### In-Court Demonstration

The Nowatskes also challenge the trial court's refusal to grant a new trial based on Osterloh's demonstration of an ophthalmoscope by shining the instrument's light in some of the jurors' eyes. During Osterloh's direct testimony, he explained how an ophthalmoscope works. His counsel then asked, "You can focus it directly on one eye?" Osterloh replied, "Oh, yes! Here, I'll demonstrate it this way here . . .." Osterloh then flashed a beam of light at some of the jurors. The trial court overruled the Nowatskes' objection, and Osterloh's testimony continued without any further reference to the demonstration.

It is within the trial court's wide discretion whether to a allow a witness to give an illustration so long as it is not an attempt to represent what actually happened. *See Rude v. Algiers,* 4 Wis. 2d 615, 621, 91 N.W.2d 198, 201-02 (1958). Osterloh's brief use of the ophthalmoscope was not used to portray his eye examination or treatment of Kim. Instead, the event demonstrated how the ophthalmoscope works. While we do not approve of the involvement of jurors in such a demonstration, the event here was isolated and momentary. Moreover, it does not appear that this demonstration was again alluded to during the trial. We see no basis for concluding that the jury was compromised, confused or misled by this isolated and brief event. We therefore uphold the trial court's ruling that a new trial was not necessary.

Finally, we address the Nowatskes' argument that there is no credible evidence to support the jury verdict. We will sustain a jury verdict if there is any credible evidence to support it. *See Nieuwendorp v. American Family Ins. Co.,* 191 Wis. 2d 462, 472, 529 N.W.2d 594, 598 (1995). Our consideration of the evidence must be done in the light most favorable to the verdict, and when more than one inference may be drawn from the evidence, we are bound to accept the inference drawn by the jury. *See id.*

The Nowatskes maintain that their expert, Fleischman, testified that Osterloh performed an "inadequate" postoperative examination and negligently failed to confirm that Kim had vision the morning following surgery after he complained of eye pain. They also contend that testimony by Dr. Fred Reeser also supported the conclusion that Osterloh was negligent in treating Kim.

However, the testimony of Dr. Frank Myers, an expert witness in the field of ophthalmology, supported Osterloh's treatment of Kim in the surgical and preoperative and postoperative stages. Myers testified that he disagreed with the suggestion by the Nowatskes' expert that Osterloh was negligent by failing to use "slip knots" or "temporary knots" when attaching a buckle to Kim's eye, which would have allowed the sutures to be loosened in the event of elevating pressure during surgery. Myers opined that using the knots is optional, not necessary, because a surgeon can just as easily cut a suture as untie a knot. In support, he cited a medical textbook which stated that when a "surgeon is not certain he [or she] has correctly localized the break, [the surgeon] can use slip

knots to facilitate later repositioning of the buckle." Myers further testified that there was no need for Osterloh to have used a temporary or slip knot because he had no problems "correctly localizing the break" during Kim's surgery.

Regarding the increase in Kim's intraocular pressure, Myers testified that it is "very common" for there to be some elevation in intraocular pressure during surgery to reattach the retina. Myers explained that there is generally no reason for great concern or alarm if the pressure goes up during surgery because "the eye eventually will compensate for it." He stated that not all surgeons take measures to lower the pressure when it elevates during surgery "because they expect that it gradually will come down." Myers testified that reasonably prudent options for a surgeon when there is an increase in pressure include cutting or loosening the sutures, or performing a paracentesis, which is placing a small knife or needle into the anterior chamber of the eye to allow the fluid out, which will then lower the pressure. Myers stated that Osterloh was not negligent when he chose paracentesis to reduce the pressure during Kim's operation. Myers also testified that Osterloh did not violate the professional standard of care by using his finger to test the intraocular pressure because the readings from an instrument or tonometer during surgery have proven inaccurate after the buckle has been placed to the eye by giving low readings.[4]

Regarding the postoperative examination, Myers testified that Osterloh's examination of Kim approximately six and one-half hours after surgery, at

---

[4] Myers stated that he himself does not routinely check pressure by using such an instrument, but instead uses his finger.

4:30 a.m., was a reasonable length of time for follow-up. Myers also stated that it was reasonable for Osterloh to use his finger instead of a tonometer to test Kim's intraocular pressure during this visit. Myers concluded that under the circumstances, Osterloh properly focused a beam of light from the ophthalmoscope on Kim's right eye to see if he had light perception. Because Kim had just had surgery under general anesthesia and had received two shots of a narcotic for pain, Myers stated that a precise type of vision test was not required at that time, just a test to determine his perception of the ophthalmoscope light. Myers stated that because Kim had been under general, rather than local, anesthesia during the surgery, it was normal for him to feel immediate pain in the eye after waking up.

Given this testimony by Myers, we conclude that there is credible evidence in the record for the jury's finding that Osterloh was not negligent in treating Kim. To counter the testimony presented by the Nowatskes' experts that Osterloh was negligent, Myers testified that Osterloh's treatment during and after Kim's surgery was within the norms of professional care. It is the jury's responsibility to determine the credibility of the witnesses and the weight to be afforded their testimony. *See Radford v. J.J.B. Enters.,* 163 Wis. 2d 534, 543, 472 N.W.2d 790, 794 (Ct. App. 1991). On appeal, it is this court's duty to look for credible evidence to sustain the jury's verdict, not to search the record for evidence to sustain a verdict that the jury could have reached, but did not. *Id.*

*By the Court.*—Judgment affirmed.