State of Wisconsin, DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Plaintiff-Appellant-Petitioner,

v.

COATINGS, INC., and Milrod, Ltd., Defendants-Respondents.

Supreme Court

*No. 84–1493. Argued October 1, 1985.—
Decided November 26, 1985.*

(Also reported in 376 N.W.2d 834.)

For the plaintiff-appellant-petitioner the cause was argued by *Bruce A. Olsen,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the defendants-respondents there was a brief by *James E. Braza, John G. Vergeront* and *Davis & Kuelthau, S.C.,* Milwaukee, and oral argument by *Mr. Braza.*

WILLIAM G. CALLOW, J.   The Department of Industry, Labor and Human Relations (DILHR) seeks review of a decision of the court of appeals affirming a judgment of the circuit court for Milwaukee county, Judge William J. Haese, granting summary judgment in favor of the defendants, Coatings, Inc. (Coatings) and Milrod, Ltd. (Milrod). We affirm the decision of the court of appeals.

This appeal presents two issues. First, does sec. 109.09, Stats., authorize DILHR to recover compensation allegedly owed a discharged employee under a fixed term contract for the period from discharge to the end of the contract? Second, does sec. 109.03(6) or sec. 109.09(1), authorize the taxation of costs against the state and in favor of Coatings and Milrod, the prevailing parties in this case?

Coatings began manufacturing and distributing sucker rods in December, 1981. From December, 1981, until April, 1982, Coatings produced sucker rods in its Milrod Division. After forming Milrod, Ltd., in April, 1982, Coatings transferred all of the sucker rod operations of its Milrod Division to Milrod, Ltd.

Early in 1982, Coatings hired David A. Beaudet to manage the Milrod Division. After extensive negotiations, the two parties entered into a written employment agreement on April 20, 1982. The agreement provided that Beaudet would manage Milrod Division from February 15, 1982, through December 31, 1985.[1] Beaudet's starting salary would be $3,750 per month, with raises based on Milrod's overall sales performance.

The employment agreement gave Coatings the right to terminate Beaudet's employment for cause upon the occurrence of any of the following conditions: (1) Beaudet's death or disability; (2) his commission of an act of dishonesty involving Coatings or any of its affiliates; (3) his failure to perform duties or negligent or incompetent performance of duties; or (4) his breach of any terms of the agreement. If Coatings terminated Beaudet for any of the foregoing reasons, Beaudet would not be entitled to any further compensation. In addition, the agreement gave Coatings the right to terminate the agreement without cause upon thirty days' notice. If terminated without cause, Beaudet could elect to receive either liquidated damages in the amount of $3,750 per month, or 5 percent of Milrod's net pre-tax profits for each fiscal year, through December, 1985, the terminal date of his employment agreement.

On January 3, 1983, Coatings assigned all of its rights and obligations under the employment agreement to Milrod, Ltd. Milrod terminated Beaudet's employment on February 18, 1983, paying him his full compensation for the entire month of February. Beaudet claims he was discharged without cause and seeks compensation from March 1, 1983, through December 31, 1985. Milrod has refused to pay Beaudet any additional compensation because it claims to have fired Beaudet for cause. Spe-

[1] The employment agreement identifies the employer as Milrod Division.

cifically, Milrod contends that Beaudet failed to perform his assigned duties, negligently and incompetently performed his duties, and committed acts of dishonesty involving Coatings and Milrod.

Beaudet filed a wage claim with DILHR on June 2, 1983. On July 11, 1983, Beaudet completed a wage assignment form authorizing DILHR to sue Milrod on his behalf. DILHR filed a complaint with the circuit court for Milwaukee county on October 31, 1983. It amended the complaint on February 1, 1984, to recover $127,500—$3,750 for each of the thirty-four months remaining on Beaudet's contract at the time of his discharge.

Coatings and Milrod moved for summary judgment, arguing that DILHR lacks the authority to bring an action to recover compensation, such as liquidated damages, that does not fit within the definition of wages found in sec. 109.01(3), Stats. The trial court ruled that sec. 109.09(1), Stats., authorizes DILHR to bring claims only for "wages." As defined in sec. 109.01(3), the term wages encompasses only remuneration payable to an employee for personal services. Finding that Beaudet had not performed any services during the period for which he sought compensation, the trial court granted summary judgment in favor of Coatings and Milrod. It also awarded costs to Coatings and Milrod in the amount of $156.02.

DILHR filed a notice of appeal with the court of appeals in July, 1984, challenging both the judgment of the trial court and its award of costs to Coatings and Milrod. On March 1, 1985, the court of appeals handed down its decision affirming the trial court's judgment and its award of costs.

The court of appeals found that sec. 109.01(3), Stats., unambiguously states that "wages" means compensation due an employee for personal services. Because Milrod

compensated Beaudet for all services he performed prior to his discharge, the court held that Milrod does not owe Beaudet any "wages." The court ruled that Beaudet actually seeks liquidated damages for Milrod's alleged breach of the employment agreement. Concluding that a liquidated damages claim is outside the range of wage claims which DILHR is authorized to bring under Chapter 109, the court of appeals affirmed the trial court's grant of summary judgment in favor of Coatings and Milrod. The court of appeals also affirmed the trial court's decision to award costs to Coatings and Milrod. Because costs are awardable to a prevailing party on a motion for summary judgment, the court of appeals found that the trial court had not abused its discretion in awarding costs.

DILHR filed a petition for review with this court on April 1, 1985. By order dated May 7, 1985, we granted the petition for review.

Beaudet claims that he is entitled to compensation, according to the terms of his employment agreement, because he was discharged without cause. Whether Beaudet's discharge was with or without cause is not a question before this court. Rather, this court must decide whether Chapter 109, Stats., authorizes DILHR to bring this type of claim on Beaudet's behalf.

Questions regarding statutory interpretation are questions of law. When reviewing questions of law, this court need not give deference to the lower courts' reasoning. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984). When construing a statute, the court must look to the language of the statute. If the statute's meaning is clear on its face, the court will not look outside the statute to determine legislative intent. *Wisconsin Electric Power Co. v. Public Service Commission,* 110 Wis. 2d 530, 534, 329 N.W.2d

178 (1983). The court should examine the scope, history, context, subject matter, and object of the statute to discern legislative intent only when the language of a statute is ambiguous and unclear. *Green Bay Redevelopment Authority v. Bee Frank,* 120 Wis. 2d 402, 409, 355 N.W.2d 240 (1984).

This case concerns secs. 109.09(1) and 109.01(3), Stats. Section 109.09(1) provides in pertinent part as follows:

"The department shall investigate and attempt equitably to adjust controversies between employers and employees as to alleged wage claims. . . . In pursuance of this duty, it may take an assignment in trust for the assigning employee of any wage claim it deems to be valid or any wage deficiency, such assignment to run to the department. The department may sue the employer on any wage claim or wage deficiency so assigned. . . ."

Section 109.01(3) defines "wages" as follows:

" 'Wage' or 'wages' mean remuneration payable to an employe for personal services, including salaries, commissions, holiday and vacation pay, overtime pay, severance pay or dismissal pay, supplemental unemployment compensation benefits when required under a binding collective bargaining agreement, bonuses and any other similar advantages agreed upon between the employer and the employe or provided by the employer to the employes as an established policy."

Agreeing with the trial court and the court of appeals, we find secs. 109.09(1) and 109.01(3), Stats., clear and unambiguous. Section 109.09(1) authorizes DILHR to pursue wage claims; sec. 109.01(3) states that DILHR can pursue only claims for "remuneration payable to an employe for personal services." This is the touchstone. Although sec. 109.01(3) describes several examples of compensation which qualify as wages, these examples do not expand DILHR's authority beyond claims for

remuneration for personal services. The examples merely give substance to the concept of remuneration for personal services. If a form of compensation is *not* for personal services, then DILHR *does not* have authority to pursue the claim.

In this case the trial court and court of appeals determined that Beaudet's claim was a claim for liquidated damages for breach of contract. Both courts concluded that compensation for a breach of contract is not "remuneration payable to an employe for personal services." Accordingly, they ruled that DILHR lacks the authority to pursue such claims under Chapter 109, Stats. We agree.

An employer could owe an employee back wages for personal services when it breaches its employment contract by terminating the employee without cause. Were DILHR to receive an assignment of the employee's claim for back wages, it would be acting within its statutory authority to bring suit against the employer to recover the wages, even though it lacks the authority to pursue any claim the employee may have for liquidated damages for breach of contract. In the instant case, however, the record shows that Milrod fully compensated Beaudet for all services he performed prior to discharge. Beaudet's entire claim is for the salary Milrod allegedly owes him for the period from his discharge to the end of the contract. Beaudet is entitled to receive this compensation only if Milrod discharged him without cause. Clearly, this type of compensation constitutes liquidated damages for an alleged breach of contract; it is not remuneration payable to an employee for personal services. DILHR's authority to pursue wage claims does not extend to breach of contract actions on behalf of discharged employees when the compensation sought on

behalf of the discharged employee is not for personal services. Accordingly, we affirm the decision of the court of appeals and hold that the trial court properly granted summary judgment in favor of Coatings and Milrod.

Having determined that the trial court properly granted summary judgment against DILHR, we need address only one more issue—the taxation of costs. The trial court taxed costs and disbursements against DILHR in the sum of $156.02. On July 10, 1984, counsel for DILHR received notice of the taxation of costs. The record shows that DILHR did not object to the taxation of costs in the trial court. DILHR objected to the taxation of costs on appeal, however, claiming that the trial court abused its discretion.

Relying on sec. 814.03(1), Stats., the court of appeals affirmed the award of costs. Section 814.03(1) provides that "[i]f the plaintiff is not entitled to costs . . . the defendant shall be allowed costs. . . ." Accordingly, the court found that the trial court had not abused its discretion when it taxed costs against DILHR.

■

In its appeal to this court, DILHR contends that the trial court lacked statutory authority to tax costs against it. It is a well-established rule in Wisconsin "that costs may not be taxed against the state unless authorized by statute." *Klingseisen v. State Highway Commission*, 22 Wis. 2d 364, 370, 126 N.W.2d 40 (1964). Coatings and Milrod contend that sec. 109.03(6), Stats.,[2] au-

---

[2] Section 109.03(6), Stats., states:

"WAGE CLAIM. In an action by an employe against the employer on a wage claim, no security for payment of costs is required. In any such proceeding the court may allow the prevailing party, in addition to all other costs, a reasonable sum for expenses. No assignee of a wage claim shall be benefited or otherwise affected by this subsection except as expressly provided by s. 109.09."

thorizes the court to award costs to them because they are the prevailing parties. DILHR argues that sec. 109.03(6) actually precludes the court from taxing costs against DILHR because it is an assignee of an employee's wage claim.

To support their contention that the statute authorizes costs, Coatings and Milrod rely upon the language that "[i]n any such proceeding the court may allow the prevailing party, in addition to all other costs, a reasonable sum for expenses." Sec. 109.03(6), Stats. The phrase "such proceeding," however, refers to "an action by an employe against the employer on a wage claim. . . ." *Id.* The action before this court is not an action by an employee against an employer; rather, it is an action by DILHR, as an assignee of a wage claim.

Section 109.03(6), Stats., offers special protection to assignees of wage claims. Specifically, it provides that "[n]o assignee of a wage claim shall be benefited or otherwise affected by this subsection except as expressly provided by s. 109.09." To determine whether the trial court had authority to tax costs against DILHR, therefore, we must turn to sec. 109.09(1).

Section 109.09(1), Stats., states that in an action by DILHR against an employer "the taxable costs recovered shall be paid into the general fund." The primary source for the construction of a statute is the language of the statute itself. *State v. Burkman,* 96 Wis. 2d 630, 638, 292 N.W.2d 641 (1980). Courts should construe statutes, however, to avoid an unreasonable or absurd result. *Id.* at 642. The language of sec. 109.09(1) clearly authorizes courts to award costs to DILHR, but does not clearly prohibit courts from taxing costs against DILHR. Construing the language to allow courts to tax costs against DILHR, however, leads to an absurd and unreasonable result because the defendant employer would

have to pay into the general fund any costs it recovers. We adopt the more reasonable construction of sec. 109.09(1) and hold that sec. 109.09(1) authorizes courts to award costs to DILHR when DILHR prevails, but does not authorize courts to tax costs against DILHR when a defendant employer prevails.

In spite of our conclusion that the trial court and court of appeals erred in taxing costs against DILHR, we are precluded from reversing the trial court's judgment. In *Klingseisen v. State Highway Commission, supra*, this court held that the State Highway Commission could not ask this court to review the taxation of costs on appeal unless it first raised the issue before the trial court. 22 Wis. 2d at 369; *State v. Zawistowski*, 95 Wis. 2d 250, 266, 290 N.W.2d 303 (1980). Consistent with the *Klingseisen* ruling, we hold that because DILHR failed to object to the taxation of costs in the trial court, it is prevented from prevailing on this issue.[3] Accordingly, we affirm the court of appeals' decision affirming the trial court's taxation of costs against DILHR.

*By the Court.*—The decision of the court of appeals is affirmed.

---

[3] Section 814.10(4), Stats., provides:

"COURT REVIEW. The clerk shall note on the bill all items disallowed and all items allowed, which have been objected to; and his action may be reviewed by the court on motion of the party aggrieved made and served within ten days after taxation, which review shall be founded on the bill of costs and the objections and proof on file in respect thereto. No objection shall be entertained on such review which was not made before the clerk, except to prevent great hardship or manifest injustice."