Susan M. TENNYSON, Plaintiff-Respondent-Cross-Appellant, ††

v.

SCHOOL DISTRICT OF the MENOMONIE AREA, Defendant-Appellant-Cross-Respondent.†

Court of Appeals

*No. 99–0709. Submitted on briefs November 15, 1999.—Decided December 14, 1999.*

## 2000 WI App 21

(Also reported in 606 N.W.2d 594.)

††Petition to cross-review denied.
†Petition to review denied.

On behalf of the defendant-appellant-cross-respondent, the cause was submitted on the briefs of *Joel L. Aberg* of *Weld, Riley, Prenn & Ricci, S.C.* of Eau Claire.

On behalf of the plaintiff-respondent-cross-appellant, the cause was submitted on the briefs of *Carol S. Dittmar, Christopher M. Seelen* of *Garvey, Anderson, Johnson, Gabler & Geraci, S.C.*

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. The School District of the Menomonie Area (district) appeals from a judgment entered upon a jury's verdict finding that Susan Tennyson was constructively discharged from her employment with the district and awarding her $11,208 in lost wages and employment benefits.[1] Tennyson cross-appeals. She challenges the trial court's failure to give the absent witness jury instruction, its refusal to award attorney fees for her unearned wages and its refusal to sanction the district for a frivolous summary judgment motion pursuant to § 814.025, STATS.[2] Both Tennyson and the district move this court for fees and costs for frivolous appeals pursuant to

---

[1] In its judgment, the circuit court awarded $11,208 plus statutory costs and attorney fees in the amount of $2,097.42, less an offset of $5,054, representing the unemployment compensation benefits the plaintiff received, for a net judgment of $8,251.42.

[2] In her notice of appeal, Tennyson additionally challenged the trial court's decision to allow the district to claim an offset for unemployment compensation benefits Tennyson had received. However, because Tennyson failed to brief this issue on appeal, we deem it abandoned. *See Reiman Assocs. v. R/A Adver.*, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292, 294 n.1 (Ct. App. 1981).

§ 809.25(3), STATS. Finally, Tennyson moves this court for double costs, a penalty, damages and reasonable attorney fees pursuant to § 809.83(1), STATS.

¶ 2. The district argues that: (1) it was denied a fair trial when the trial court relied upon California's constructive discharge law to instruct the jury; (2) because Tennyson resigned her position, the district did not discharge her in violation of her contract; (3) the trial court erred by denying the district's post-verdict motion to apply the governmental immunity provisions of § 893.80(4), STATS.; and (4) in any event, Tennyson failed to prove that she was constructively discharged in violation of her employment contract with the district.

¶ 3. We conclude that the trial court properly followed the law of the case in instructing the jury and, although no Wisconsin case has extended the law of constructive discharge in the context of an ordinary employment contract with a "for cause" provision, we adopt the reasoning of other jurisdictions that have. Further because the district's written policy guarantees its employees that they will not be discharged without cause, a constructive discharge without cause constitutes a breach of contract. Additionally, because our decision here, consistent with our disposition of an earlier appeal, establishes the existence of a breach of contract claim based on constructive discharge, the district's claim of governmental immunity from tort actions is misplaced. Finally, upon our review of the evidence presented at trial, we hold that a reasonable jury could conclude that Tennyson had been constructively discharged, in breach of her employment contract.

¶ 4. With regard to Tennyson's cross-appeal, we conclude that the trial court properly denied Tenny-

son's motion to impose sanctions on the district for a frivolous claim pursuant to § 814.025, STATS. We further conclude that even were we to assume that the trial court erred by not giving the absent witness jury instruction, Tennyson failed to establish how she has been prejudiced by the alleged error. Finally, because the lower courts are bound by the decisions of our supreme court, the trial court did not err by refusing to award Tennyson attorney fees for her unearned wages.

¶ 5. With regard to the parties' motions for fees for frivolous appeal and cross-appeal, we conclude that neither the district's appeal nor Tennyson's cross-appeal are frivolous as contemplated under § 809.25(3), STATS., and thus deny both motions. Finally, because it was reasonable for the district to preserve its issues for appeal, we additionally deny Tennyson's motion for double costs, a penalty, damages and reasonable attorney fees pursuant to § 809.83(1), STATS.

## I. BACKGROUND

¶ 6. It is undisputed that Tennyson was employed by the district as a payroll clerk and was subject to a personnel policy that provided she was not to be discharged "without cause." During her employment with the district, direct supervision of Tennyson transferred from Allan May, the district's assistant superintendent, to Wayne Devery, the district's business manager. May nevertheless remained in a supervisory position over Tennyson, as Tennyson's job required communication with him on various issues.

¶ 7. In October 1995, Tennyson filed a complaint alleging that the district had breached her employment

contract.[3] Specifically, Tennyson asserted that May had created an intolerable and hostile work atmosphere that resulted in her needing to take medical leave. She alleged that the district's failure to appropriately remedy the problems reported precluded her return to work, thereby resulting in her constructive discharge. Tennyson further alleged that her constructive discharge constituted a breach of the contract guaranteeing discharge only for cause. The district, arguing that Tennyson had failed to state a claim upon which relief could be granted, moved the circuit court to dismiss Tennyson's action pursuant to § 802.06, STATS. The circuit court granted the district's motion, and Tennyson appealed from the judgment dismissing her complaint.

¶ 8. In that appeal, we reversed the circuit court's dismissal of Tennyson's claim and concluded that Tennyson's complaint implied a claim of constructive discharge. Although the district challenged the concept of a constructive discharge in the context of an ordinary employment contract with a "for cause" provision, we held that "an employer may constructively discharge a person where working conditions are so intolerable that a reasonable person is compelled to resign to avoid recurrence." *Tennyson v. School Dist.*, No. 96–1227, unpublished slip op. at 5 (Wis. Ct. App. Jan. 14, 1997).

¶ 9. Our supreme court subsequently denied the district's petition for review. *See Tennyson v. School Dist.*, 211 Wis. 2d 532, 568 N.W.2d 299 (1997). On remand, the district answered Tennyson's amended complaint and in February 1998, moved the circuit court for summary judgment, again arguing that Ten-

---

[3] Tennyson filed an amended complaint in March of 1996.

nyson had failed to state a claim upon which relief could be granted. Alleging that the district's summary judgment motion was frivolous under § 814.025, STATS., Tennyson moved the court for actual costs and attorney fees incurred in resisting the district's motion. Pursuant to § 802.05, STATS., the district then moved the court to strike Tennyson's § 814.025 motion and to sanction Tennyson's counsel for causing a needless increase in the district's litigation expenses. The court thereafter denied both the summary judgment motion and Tennyson's motion for costs, finding neither to be frivolous. The parties then proceeded to trial.

¶ 10. At trial, Tennyson testified that although she and May initially had a good working relationship, that relationship started deteriorating during the summer of 1994. Tennyson testified about various instances in which May humiliated and demeaned her in front of others and otherwise engaged in physically intimidating behavior, such as staring at her, approaching her desk and forcing her to back into the corner of her workspace. Tennyson additionally testified that when her work required her to ask May a question, he would simply ignore her, thereby making it difficult for her to do her job. Tennyson testified that although she knew that David Smette, the district's superintendent, was the only individual with authority over May, she did not initially complain to Smette because she perceived him to have very little control over May.

¶ 11. Tennyson was ultimately placed on medical leave effective September 9, 1994. Tennyson testified that the following week, May called her at home three times. During his first call, May indicated that he had heard Tennyson was off of work because of him. Although Tennyson responded that he was not entirely

correct, May called the next day to reiterate his belief that she was indeed off of work because of him. May further indicated that he was watching Tennyson. During his third call, May told Tennyson that she was going to be replaced. Tennyson testified about another incident with May that occurred after Tennyson dropped her daughter off at school. During that encounter, May followed Tennyson down the length of the building and reiterated, "I told you I would be watching you."

¶ 12. Tennyson first complained about May's conduct to Smette in October 1994. She testified that although Smette initially feigned concern, her subsequent inquiries on the status of his investigation of her claims were met with hostility. Smette testified, to the contrary, that Tennyson was reluctant to provide him with the details necessary for him to fully investigate her claims until January of 1995. Regardless, Smette met with Tennyson on January 21, 1995, and sent her a follow-up letter dated January 26, outlining her concerns, as he interpreted them.

¶ 13. Thereafter, various letters were sent between Tennyson and Smette regarding proposals for Tennyson's return to work and Smette's responses. In a letter to Smette dated January 25, Tennyson set forth the following conditions for her return to work: (1) a verbal and written apology from May; (2) a written plan of action, to include consequences in the event of further inappropriate behavior; (3) a written letter of recommendation from Smette; and (4) the physical separation of the payroll department from May. Tennyson's letter additionally indicated that her physi-

cian had determined she could return to work on a half-time basis.[4]

¶ 14. In a letter dated January 31, Smette responded that: (1) a written apology from May was on its way;[5] (2) a written plan of action would be prepared; (3) a qualified letter of recommendation would be provided; and (4) her desk would be moved to the outer office. With respect to Tennyson's request to return part-time, Smette indicated that there were no half-time positions currently available and that her request could not be evaluated without information from her physician. Smette testified that in the meantime, he investigated Tennyson's claims and issued the results of this investigation in a report dated January 30, 1995.

¶ 15. In his investigative report, Smette found that May had teased Tennyson, but that it was part of the "workplace lightheartedness." Apart from the teasing, Smette did not find that May had publicly humiliated or otherwise intimidated Tennyson. Smette, in fact, concluded in his report that "[t]he perception of intimidation is different for different people." Smette additionally found that although May had called Tennyson shortly after she began her medical leave, Tennyson's refusal to communicate her concerns directly to May "closed the door to resolving the con-

---

[4] According to an "Attending Physician's Statement" dated January 30, 1995, and stipulated to by the parties, Tennyson's physician noted that Tennyson could return to work on February 1; however, she was to work half days from February 1 to February 14, then full days thereafter. Smette testified he never received this documentation.

[5] The record includes a written apology from May to Tennyson, dated January 31, with a written notation indicating that it was mailed to Tennyson on February 3.

flict."[6] Smette discussed the conclusions of his investigation with Tennyson on February 2, and on February 3, sent a follow-up letter indicating her right to appeal his findings to the board of education.

¶ 16. By letter dated February 3, Tennyson resigned her position with the district citing her belief that the investigation of her concerns was neither fair nor unbiased. Tennyson thereafter appealed Smette's findings to the board and on March 27, the board concluded that Smette had conducted a fair, impartial and thorough investigation. Although it made a few additional findings, the board substantially accepted Smette's conclusions regarding Tennyson's claims about May.

¶ 17. At trial, the jury was given the following instruction regarding constructive discharge:

> A constructive discharge occurs when an employer makes an employee's working conditions so intolerable that an employee is forced into an involuntary resignation. In order to find a constructive discharge, you must find that the following three elements were present: First, that the working conditions were so difficult or unpleasant that a reasonable person in the employee's position would have been compelled to resign (note that your determination of the existence of this element is not whether the plaintiff herself resigned because of the working conditions she was subjected to, the inquiry is whether a reasonable person in the plain-

---

[6] Smette also investigated Tennyson's concerns regarding: (1) whether a computer network coordinator position should be hourly or professional/exempt; (2) time card issues and getting help from principals; (3) management of computer systems; (4) the ability to speak up about certain issues in staff meetings; and (5) input on various administrative decisions.

tiff's position would have resigned); second, you must find that the intolerable working conditions [caused] the employee to resign; third, you must find that the employer knew of the intolerable conditions and permitted them to go substantially unremedied. For this element, the requisite knowledge of intolerable working conditions must exist on the part of the employer [or] those persons who effectively represent[ ] the employer, its officers, directors, managing agents or supervisory employees. To permit intolerable conditions to go substantially unremedied the employer must have either intentionally crafted or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable . . . employer would realize that a reasonable person in the employee's position would have been compelled to resign.

The jury was further instructed that "[f]ailure of a party to . . . perform a material obligation required by a written agreement, without justification, constitutes breach of that agreement."

¶ 18. The jury found that Tennyson had been constructively discharged from her employment. The court denied the district's post-verdict motion to apply the governmental immunity provisions of § 893.80(4), STATS., and entered judgment consistent with the jury's verdict. This appeal and cross-appeal followed.

## II. ANALYSIS

### A. Constructive Discharge as Breach of Employment Contract

¶ 19. The district initially argues that it was denied a fair trial when the trial court improperly relied upon California law to try the case and charge

the jury.[7] The district coats its argument with various issues, arising from the trial court's reference to California case law. However, at its heart, the district's contention is that the trial court erred by instructing the jury on constructive discharge because Wisconsin does not recognize a cause of action for constructive discharge in the context of an ordinary employment contract. The district is mistaken.

¶ 20. In *Univest Corp. v. General Split Corp.*, 148 Wis. 2d 29, 38, 435 N.W.2d 234, 238 (1989), our supreme court recognized the "longstanding rule that a decision on a legal issue by an appellate court establishes the law of the case, which must be followed in all subsequent proceedings in the trial court or on later appeal." *Id.* Here, the trial court properly followed "the law of the case," as this court earlier held that Tennyson could bring a cause of action for breach of contract based on constructive discharge. We now take this opportunity to elaborate on our earlier holding.

¶ 21. Although no Wisconsin case has extended the law of constructive discharge in the context of an ordinary employment contract with a "for cause" provision, we adopt the reasoning of other jurisdictions that have.[8] The district contends that it did not violate the

---

[7] At trial, the district objected to the jury instruction on constructive discharge, arguing that no such cause of action existed under Wisconsin law. The court overruled the objection, referring to its oral disposition of the district's summary judgment motion, in which it cited California law on constructive discharge to deny the district's motion.

[8] For cases recognizing a cause of action for breach of contract based on constructive discharge, *see generally Turner v. Anheuser-Busch, Inc.*, 876 P.2d 1022, 1026–27 (Cal. 1994); *Mullins v. Rockwell Int'l Corp.*, 936 P.2d 1246 (Cal. 1997);

employment contract because Tennyson, in fact, resigned her position with the district. The law of constructive discharge, however, recognizes that an employer may make working conditions so intolerable that an employee may reasonably feel compelled to resign. *See Turner v. Anheuser-Busch, Inc.*, 876 P.2d 1022, 1025 (Cal. 1994). A constructive discharge is therefore legally regarded as a firing rather than a resignation. *See id.* Where, as here, an employer's written policy guarantees its employees that they will not be discharged without cause, a constructive discharge without cause constitutes a breach of contract.[9] *See id.* at 1030.

¶ 22. To establish a cause of action for constructive discharge in the context of an ordinary employment contract, an employee's working conditions must have been so intolerable that a reasonable person in the employee's position would have been compelled to resign. *See Hammond v. Katy Indep. Sch. Dist.*, 821 S.W.2d 174, 177 (Tex. App. 1991); *see also Turner*, 876 P.2d at 1027. The *Turner* court recognized,

*Hammond v. Katy Indep. Sch. Dist.*, 821 S.W.2d 174, 177 (Tex. App. 1991).

[9] The district asserts that these facts present a tort action disguising itself as a breach of contract action. As such, the district argues that the trial court erred by failing to apply the governmental immunity provisions of § 893.80(4), STATS. Under *Energy Complexes v. Eau Claire County*, 152 Wis. 2d 453, 465, 449 N.W.2d 35, 39 (1989), the governmental immunity provisions of § 893.80(4) are inapplicable to suits involving a local governmental body's contractual obligations. Because our decision establishes the existence of a cause of action for breach of contract based on constructive discharge, the holding of *Energy Complexes* bars the district's claims for governmental immunity.

however, that "[a]n employee may not be unreasonably sensitive to his [or her] working environment." *Turner*, 876 P.2d at 1027. Although an employee is protected from unreasonably difficult or unpleasant conditions relative to those faced by his or her co-workers, an employee is not guaranteed a working environment completely free of stress. *See id.* Beyond showing that the working conditions were objectively intolerable, the adverse working conditions must have actually caused the employee to resign. Finally, the employer must have either deliberately·created the intolerable working conditions that triggered the resignation or, at a minimum, must have "knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." *Id.* at 1029. This requisite knowledge must exist on the part of the employer or any person who effectively represents the employer, which would include without limitation, its officers, directors, managing agents and supervisory employees. *See id.*

■

¶ 23. The *Turner* court, recognizing that an employer's intent to cause a resignation will rarely be revealed by direct evidence, acknowledged that the majority of courts have declined to require proof of an employer's express intent to force an employee to resign. *See id.* at 1028. Consistent with *Turner* and *Hammond*, we conclude that it is necessary to examine the conditions imposed on the employee, not the employer's state of mind. *See Hammond*, 821 S.W.2d at 177. Thus, an employee does not need to prove that an employer subjectively intended to force the employee to resign. It suffices if the employer's actions were delib-

erate, or, in cases of harassment by supervisors or fellow employees, if the employer was aware of the intolerable working conditions and permitted them to continue unremedied. Because the trial court properly instructed the jury on what is necessary to prove a constructive discharge, the district's arguments to the contrary are unpersuasive.[10]

¶ 24. The district, in the alternative, argues that even if Tennyson has stated a cause of action for breach of contract based on constructive discharge, she has failed to meet her burden of proof on the necessary legal elements as charged to the jury. Where, as here, there is a challenge to the sufficiency of the evidence, a jury's verdict "must be sustained if there is any credible evidence which under any reasonable view of the evidence considered in a light most favorable to the verdict meets the burden of proof applicable to that type of case and thus supports the verdict." *Britton v. Hoyt*, 63 Wis. 2d 688, 693, 218 N.W.2d 274, 277 (1974).

¶ 25. Without detailing all the facts again, Tennyson testified about various instances in which May humiliated and demeaned her and otherwise engaged in physically intimidating behavior. Tennyson additionally testified that although her initial complaints to Smette were met with apparent concern, her subsequent attempts to learn the status of Smette's investigation were met with hostility. Smette testified, on the contrary, that Tennyson's reluctance to provide details or otherwise allow him to confront May hin-

---

[10] The district mistakenly argues that the trial court failed to instruct the jury on breach of contract. In its instructions to the jury, however, the trial court stated that the "[f]ailure of a party to . . . perform a material obligation required by a written agreement, without justification, constitutes breach of that agreement."

dered his investigation. After seeing Smette's investigative report, Tennyson ultimately resigned, believing that the investigation into her claims was neither fair nor unbiased.

¶ 26. Where, as here, there is conflicting testimony, "[t]he credibility of witnesses and the weight given to their testimony are matters left to the jury's judgment, and where more than one inference can be drawn from the evidence, this court must accept the inference drawn by the jury." *Bennett v. Larsen Co.*, 118 Wis. 2d 681, 706, 348 N.W.2d 540, 554 (1984) (quoting *Shawver v. Roberts Corp.*, 90 Wis. 2d 672, 681, 280 N.W.2d 226, 230 (1979)). Upon our review of the evidence, we hold that a reasonable jury could conclude that Tennyson had been constructively discharged in breach of her employment contract.

## B. Tennyson's Cross-Appeal

¶ 27. On cross-appeal, Tennyson argues that the trial court erred by failing to find the district's summary judgment motion frivolous under § 814.025, STATS.[11] On remand to the trial court, the district, consistent with the statutory standard for summary judgment, argued that this case presented no genuine issue of material fact that would preclude the court from granting their summary judgment motion. *See* § 802.08(2), STATS. It nevertheless focused its argu-

---

[11] Section 814.025, STATS., provides, in part:

(1) If an action or special proceeding commenced or continued by a plaintiff or a counterclaim, defense or cross complaint commenced, used or continued by a defendant is found, at any time during the proceedings or upon judgment, to be frivolous by the court, the court shall award to the successful party costs determined under s. 814.04 and reasonable attorney fees.

ment for summary judgment on its contention that Tennyson had "failed to state a claim upon which relief could be granted." Tennyson asserts that because the district's summary judgment motion forwarded arguments that had already been rejected by this court in the previous appeal, its motion was made in bad faith for the purpose of harassing Tennyson.

¶ 28. In order to impose sanctions against a party for frivolous claim under § 814.025, STATS., the court must find one of the following:

> (a) The action, special proceeding, counterclaim, defense or cross complaint was commenced, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another.
>
> (b) The party or the party's attorney knew, or should have known, that the action, special proceeding, counterclaim, defense or cross complaint was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

Section 814.025(3), STATS. The inquiry into whether a claim is frivolous under the statute is a mixed question of law and fact. *See Stern v. Thompson & Coates, Ltd.*, 185 Wis. 2d 220, 236, 517 N.W.2d 658, 664 (1994). A trial court's findings of fact will be affirmed unless they are clearly erroneous. *See Sellers v. Sellers*, 201 Wis. 2d 578, 585, 549 N.W.2d 481, 484 (Ct. App. 1996); *see also* § 805.17(2), STATS. However, "the ultimate conclusion of whether the facts cited fulfill the legal standard of frivolousness is a question of law" that this court reviews de novo. *Stern*, 185 Wis. 2d at 236, 517 N.W.2d at 664. Further, "[a]n appellate court must accept a

reasonable inference drawn by the trial court from established facts if more than one reasonable inference may be drawn." *Id*. at 237, 517 N.W.2d at 664. However, "[w]hether an inference is reasonable is itself a question of law." *Id*.

¶ 29. In its decision denying Tennyson's motion to impose costs for frivolous claim, the trial court stated: "The standard for review for a motion to dismiss for failure to state a claim and that for summary judgment is different in that the plaintiff is put on their proof in one and not the other." Similarly, on appeal, the district points to the distinctions between a motion to dismiss and a motion for summary judgment. Although this argument is not overly persuasive under the facts of this case, we conclude that the trial court reasonably inferred, based on these distinctions, that the district's summary judgment motion was not frivolous under § 814.025, STATS.[12] Further, the district's summary judgment motion was reasonable given their understandable desire to preserve for appeal the issue of what constitutes a constructive discharge in Wisconsin.

¶ 30. Tennyson further argues on cross-appeal that the trial court erred by failing to give the absent witness jury instruction, an instruction requested due to Alan May's absence at trial.[13] A trial court has

---

[12] The district advances alternative arguments to support its argument against costs for frivolous claim. Because our resolution of this issue is dispositive, we need not address the other issues raised. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983).

[13] The absent witness instruction, WIS J I—CIVIL 410, provides:

"broad discretion when instructing a jury so long as it fully and fairly informs the jury of the rules and principles of law applicable to the particular case." *Nowatske v. Osterloh*, 198 Wis. 2d 419, 428, 543 N.W.2d 265, 268 (1996). When a trial court has given an erroneous instruction or has erroneously refused to give an instruction, "a new trial is not warranted unless the error is prejudicial." *Id.* at 429, 543 N.W.2d at 268.

¶ 31. Here, even if we were to assume that the trial court erred by not giving the absent witness jury instruction, Tennyson has failed to establish how she has been prejudiced by the alleged error. Moreover, she does not argue for a new trial, but rather, contends that her intent is to preserve the issue for appeal should the judgment be reversed or remanded. Whether such an instruction is appropriate at a retrial depends upon the circumstances then, not now. In any event, because we affirm the judgment, it becomes unnecessary to discuss the issue.

¶ 32. Tennyson's final argument on cross-appeal is that the trial court erred by ruling that she could not claim attorney fees under ch. 109, STATS., governing wage claims.[14] Tennyson concedes, however, that

---

If a party fails to call a material witness within its control, or whom it would be more natural for that party to call than the opposing party, and the party fails to give a satisfactory explanation for not calling the witness, then you may infer that the evidence which the witness would give would be unfavorable to the party who failed to call the witness.

[14] In an action against an employer to collect on a wage claim, the court may award an employee a reasonable sum for his or her expenses. *See* § 109.03(6), STATS. "Expenses" has been interpreted to include an award for attorney fees. *See Jacobson v. American Tool Cos.*, 222 Wis. 2d 384, 400–01, 588 N.W.2d 67, 74 (Ct. App. 1998).

under our supreme court's holding in *DILHR v. Coatings, Inc.*, 126 Wis. 2d 338, 345, 376 N.W.2d 834, 837–38 (1985), the term "wages" does not include unearned salary due and owing to a discharged employee. In *Coatings*, an employee had assigned his wage claim to an administrative agency, and it was the agency that incurred attorney fees and bore the risk of the claim. Tennyson urges this court not to apply the holding of *Coatings* because here, it is the employee, and not the agency, that has incurred the attorney fees and borne the risk of the claim. We decline to depart from *Coatings* simply because it was the employee, and not the agency, that incurred the fees and bore the risk. Because Tennyson forwards an immaterial distinction and because we are bound by the decisions of our supreme court, we conclude that *Coatings* is applicable to the instant case. *See State v. Clark*, 179 Wis. 2d 484, 493, 507 N.W.2d 172, 175 (Ct. App. 1993). Accordingly, we conclude that the trial court properly determined that Tennyson could not claim attorney fees under ch. 109.

## C. Motions for Frivolous Appeal and Cross-Appeal

¶ 33. Both Tennyson and the district move this court for fees and costs for frivolous appeals pursuant to § 809.25(3), STATS. This court decides, as a matter of law, whether an appeal is frivolous. *See NBZ, Inc. v. Pilarski*, 185 Wis. 2d 827, 841, 520 N.W.2d 93, 98 (Ct. App. 1994). In order to impose sanctions against a party for a frivolous appeal under § 809.25, we must determine whether one or more of the following exist:

1. The appeal or cross-appeal was filed, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another.

2. The party or the party's attorney knew, or should have known, that the appeal or cross-appeal was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

■■

¶ 34. With regard to the district's appeal, Tennyson contends that because the district raises issues in its brief that this court has already decided, it must have filed its appeal in bad faith and without any reasonable basis in law or equity and solely for the purpose of harassing or maliciously injuring Tennyson. We disagree. As constructive discharge in the context of an ordinary employment contract with a "for cause" provision is a new area of law, it was reasonable for the district to preserve its issues for appeal. *See generally McKnight v. General Motors Corp.*, 511 U.S. 659 (1994). We therefore conclude that the district's appeal was not frivolous under § 809.25(3), STATS.[15]

■■

¶ 35. Turning to Tennyson's cross-appeal, we agree with the trial court that there is nothing to suggest that her arguments for attorney fees arising from the district's summary judgment motion were made in

---

[15] Tennyson additionally moved this court for double costs, a penalty, damages and reasonable attorney fees pursuant to § 809.83(1), STATS. Section 809.83(1) provides in relevant part: "If the court finds that an appeal was taken for the purpose of delay, it may award: 1. double costs; 2. a penalty in addition to interest not exceeding 10% on the amount of the judgment affirmed; 3. damages occasioned by the delay; and 4. reasonable attorney[ ] fees." Because it was reasonable for the district to preserve its issues for appeal, we deny Tennyson's § 809.83(1) motion.

bad faith. We similarly conclude that her unsuccessful argument for the inapplicability of *Coatings* to her claim for attorney fees under ch. 109, STATS., was made in good faith. Although her argument regarding the absent witness jury instruction may be frivolous, "we may not award fees under § 809.25(3)(a), STATS., *unless the entire appeal is frivolous.*" *Manor Enterprises v. Vivid, Inc.*, 228 Wis. 2d 382, 403, 596 N.W.2d 828, 837 (Ct. App. 1999) (emphasis added).

*By the Court.*—Judgment affirmed. No costs are awarded to either party.