**Donald RAFFAELLI, Plaintiff,**

v.

**ADVO, INC., Defendant.**

**No. 02–C–0254.**

United States District Court,
E.D. Wisconsin.

Aug. 22, 2002.

---

**7.** Other conditions are set forth in the judgment.

Richard Saks, Milwaukee, WI, for Plaintiff.

Heidi B. Retzlaff, Milwaukee, WI, for Defendant.

### DECISION AND ORDER

ADELMAN, District Judgè.

### I.  BACKGROUND

Plaintiff Donald Raffaelli commenced this action against his former employer,

defendant Advo, Inc., in Milwaukee County Circuit Court alleging three claims: (1) breach of contract for defendant's failure to pay him severance; (2) violation of Chapter 109 of the Wisconsin Statutes, which authorizes employees in certain cases to recover from employers unpaid wages, penalties and attorney fees, also for defendant's failure to pay him severance; and (3) defamation. Defendant removed the case to federal court pursuant to 28 U.S.C. §§ 1441 and 1332 based on diversity of citizenship. Plaintiff is a citizen of Wisconsin, defendant is a Delaware corporation with its principal place of business in Delaware, and the amount in controversy exceeds $75,000. Pursuant to Fed. R.Civ.P. 12(b)(6), defendant now moves to dismiss plaintiff's Chapter 109 claim.

## II. FACTUAL ALLEGATIONS

In 1981, defendant purchased an advertising company which plaintiff principally owned and hired plaintiff as a sales manager and sales representative. On April 23, 1987, the parties entered into a contract providing that if plaintiff were terminated, he would not compete with defendant for six months, and, if he were terminated without cause, defendant would pay him severance equal to two weeks compensation for each full year of employment. On November 28, 2001, defendant terminated plaintiff and began paying severance pursuant to the contract. However, on January 23, 2002, defendant stated that it had cause for the termination and ceased making severance payments. Defendant did not claim that plaintiff violated the non-compete agreement.

## III. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6). Dismissal of an action under such a motion is warranted if the plaintiff can prove no set of facts in support of its claims that would entitle him or her to relief. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir.1997); *see Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The essence of a Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts, it is that even assuming all of his facts are accurate, he has no legal claim. *Payton v. Rush–Presbyterian–St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir.1999). All facts are assumed to be true, and all facts, and all reasonable inferences flowing from those facts, are read in the light most favorable to the plaintiff. *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323 (7th Cir. 1990).

## IV. DISCUSSION

■ Wis. Stat. § 109.03(5) creates a private right of action to recover unpaid wages. Wis. Stat. § 109.01(3) defines "wages" as "remuneration payable to an employee for personal services, including salaries, commissions, ... severance or dismissal pay ...." The key to determining whether remuneration constitutes "wages" within the meaning of the statute is whether it is compensation for personal services. *Dep't of Labor, Indus. & Human Relations v. Coatings, Inc.*, 126 Wis.2d 338, 345, 376 N.W.2d 834 (1985). If not, a Chapter 109 claim will not lie. The phrase "personal services" has been defined as human labor which is "in the nature of a service as distinguished from the endproduct or the fruit of the service." *In re Javornik's Estate*, 35 Wis.2d 741, 749, 151 N.W.2d 721 (1967).

Plaintiff argues that under the contract with defendant, he provided personal services in exchange for severance payments and, therefore, he states a claim under Chapter 109. To determine whether the

contract required plaintiff to provide personal services, I must interpret the contract. However, first, I must determine what law applies.

■ In a diversity case, a federal court applies the substantive law of the state in which it sits, including that state's choice of law rules. *Sonoco Bldgs., Inc. v. Am. Home Assurance Co.*, 877 F.2d 1350, 1352 (7th Cir.1989). Thus, Wisconsin law governs the construction of Chapter 109. However, a provision in the contract between the parties provides that it is to be interpreted under Connecticut law. Wisconsin recognizes that the parties to a contract may agree that the law of a particular jurisdiction shall govern issues arising under the contract. *McCloud Constr., Inc. v. Home Depot, U.S.A., Inc.*, 149 F.Supp.2d 695, 700 (E.D.Wis.2001). Thus, I will construe the contract in accordance with Connecticut law.

The agreement in question consists of seven paragraphs. In pertinent part it specifies:

> In consideration for the mutual promises contained herein, you have reached the following understanding with Advo.

> . . . . .

> 2. While you continue in your employment with ADVO and thereafter, you agree:
>    a. not to use any of this confidential and proprietary information for your own or anyone else's benefit; and
>    b. not to disclose any such information; and
>    c. not to interfere with or damage ADVO's relationship with its customers or potential customers; and
>    d. not to solicit or encourage ADVO employees to work with or aid in any way any of ADVO's competitors or potential competitors.

> 3. After your termination from ADVO for any reason, you agree that for a period of six (6) months you will not work for, participate in or consult for any business which collates or distributes advertising material on behalf of customers to consumer households,

> . . . . .

> 4. Upon your termination from ADVO for any reason, you immediately will return to ADVO all written or printed materials which have any bearing on ADVO's business as described in paragraph 3, including the confidential and proprietary information described in paragraph 1.

> 5. In consideration for your signing this agreement, if you are terminated by ADVO for other than cause, you will be granted severance pay of two (2) weeks' compensation for each full year of service with ADVO. The two weeks' compensation will be calculated by taking an average of your most recent twenty-six (26) weeks' compensation and multiplying by two (2).

> . . . . .

> 6. You understand that this is not a contract of employment.

> . . . . .

(Compl. Ex. A (attached to Notice of Removal).)

Defendant argues that the phrase "in consideration for signing this agreement," *id.*, in paragraph 5 indicates that it agreed to pay severance to plaintiff in return for his simply signing the agreement, rather than for any personal services that he was required to provide under it. Plaintiff disagrees, contending that defendant agreed to pay severance in return for plaintiff's agreeing not to compete, among other things.

■■ A contract is to be construed according to the understanding and intention of the parties. *Lar–Rob Bus Corp. v. Town of Fairfield*, 170 Conn. 397, 365 A.2d 1086, 1092 (1976). That intention is to be determined from the language used, according to the situation of the parties and the circumstances of the transaction. *Id.* A contract is to be construed as a whole and all relevant provisions considered together. *Id.* Construing the agreement in light of the foregoing principles, I conclude that defendant's promise to make severance payments was not made solely because plaintiff signed the agreement, but rather in return for the commitments that plaintiff made in the agreement

■■ The first sentence in the contract states that "in consideration for the mutual promises contained herein, you have reached the following understanding with ADVO." (Compl.Ex. A.) This language indicates that defendant's promise to pay severance to plaintiff was made in return for the various promises made by plaintiff, including his promises not to disclose proprietary information and not to compete with defendant. Under defendant's proposed construction of the contract, defendant's obligation to make severance payments was based solely on plaintiff's signing the document, without regard to whether he performed the obligations that the contract imposed on him. This interpretation is inconsistent with the parties' intention as expressed in the overall agreement. What benefit would defendant gain from plaintiff's signing a contract that did not require him to do anything? Similarly, why would plaintiff refrain from competing with defendant if he could receive severance payments whether he competed or not? Defendant's proposed interpretation of the contract would drain it of meaning. Construing the contract as a whole and considering the intentions of the parties, the phrase, "in consideration

for your signing this agreement" in paragraph 5 should be read as obligating plaintiff not only to sign the agreement but to abide by it. Thus, I conclude that defendant's promise to make severance payments to plaintiff was made in return for plaintiff's commitment not to compete with defendant in the event of his being fired without cause.

■■ As stated above, in order to state a claim under Chapter 109, plaintiff must seek to recover compensation for personal services. *See Coatings,* 126 Wis.2d at 345, 376 N.W.2d 834. Plaintiff's agreement not to complete was an agreement to render personal services. *See In re Javornik's Estate,* 35 Wis.2d at 749, 151 N.W.2d 721. Not competing was a service rather than a product, and plaintiff rendered it personally. That plaintiff refrained from engaging in an activity was no less a service to defendant than if he had acted affirmatively. *See also Slone v. Aerospace Design & Fabrication, Inc.,* 111 Ohio App.3d 725, 676 N.E.2d 1263, 1267 (1996) (performance of non-compete agreement is personal service); *Schaefer v. Comm'r,* 105 T.C. 227, 1995 WL 542395 (1995) (refraining from engaging in competition is equivalent to a personal service).

Defendant argues that *Coatings* bars plaintiff from using Chapter 109 to obtain severance payments. *Coatings* addressed a contract entitling an employee to severance payments if he were terminated without cause. *Coatings,* 126 Wis.2d at 341, 376 N.W.2d 834. The court held that under that agreement, severance payments were liquidated damages for breach of contract, not payment for personal services, because plaintiff did not have to do anything to obtain the benefits. *Id.* at 345, 376 N.W.2d 834. However, the present case is distinguishable from *Coatings* because, as has been shown, in order to

receive severance benefits plaintiff was required to perform a personal service.

## V. CONCLUSION

For the foregoing reasons, the severance payments at issue in the present case constitute remuneration for personal services and are, therefore, "wages" within the meaning of Wis. Stat. § 109.01(3). Therefore, plaintiff is entitled to proceed with his claim under Wis. Stat. § 109.03(5).

**THEREFORE, IT IS ORDERED** that defendant's motion to dismiss plaintiff's Chapter 109 claim is **DENIED**.